NELSON, RESPONDENT, *v.* GREAT NORTHERN RAILWAY COMPANY, APPELLANT.

(No. 1,522.)

(Submitted April 15, 1903.  Decided June 1, 1903.)

*Carriers—Transportation of Stock—Delay—Liability—Complaint — Allegations — Nature of Action — Common-Law Duties—Limitations by Special Contract—Validity — Evidence—Burden of Proof—Instructions — Measure of Liability—Double Damages—Verdict—Conflicting Evidence— Review.*

| 28 | 297 |
|----|-----|
| 30 | 267 |
| 30 | 318 |
| 30 | 392 |
| 30 | 417 |

| 28 | 297 |
|----|-----|
| 29 | 36 |
| 29 | 144 |
| 29 | 508 |

| 28 | 297 |
|----|-----|
| 35 | 79 |
| 36 | 311 |

| 28 | 297 |
|----|-----|
| 37 | 7 |

| 28 | 297 |
|----|-----|
| 41 | 334 |
| 41 | 335 |
| 41 | 492 |

| 28 | 297 |
|----|-----|
| 40 | 412 |

1. Actions on contracts and actions in tort cannot be united.

2. The complaint in an action against a carrier for violations of a special contract of shipment must set out the contract either in substance or in *haec verba,* and must declare upon it.

3. The complaint in an action in tort against a carrier for a breach of its common-law duties in the shipment of goods must allege facts which will show, not only the rights of the shipper, but the duties of the carrier as well.

4. A complaint, in an action brought to recover damages claimed to have been sustained by the plaintiff as a shipper of live stock over defendant's railroad, examined, and *held* to state a cause of action in tort.

5. Where a common carrier, accepting property for transportation, commits a breach of its common-law duties, the shipper may maintain an action in tort therefor, though the carrier receives the property under a special contract limiting its liability; the carrier in accepting the shipment accepting it with the obligations imposed by law, and the special contract merely constituting a defense in so far as the exemptions from liability which it creates are valid must be pleaded as a defense, and the burden of proof rests on the defendant to establish it.

6. Where the special contract entered into between the shipper and the carrier (a railroad company) provides that the shipper shall attend, water, and feed the live stock shipped, such contract relieves the carrier from all duty and obligation respecting such matters, but does not relieve it of the duty imposed by law of properly handling its trains, and of affording reasonable facilities for enabling the shipper to give the live stock proper care and attention.

7. In tort against a common carrier for delay in the transportation of sheep the shipper could show the condition of the sheep at the time of their shipment, and, whether evidence of the treatment and food received by the sheep immediately prior to the shipment was a correct way to show this condition or not, defendant was not prejudiced by such evidence, admitted without objection, where the court charged the jury not to consider any damages sustained prior to the loading of the sheep on the carrier's cars.

8. Where a contract for the transportation of sheep by a common carrier fixes a valuation on the sheep per head, the measure of the liability of the carrier for damages resulting from a breach of its duties causing injury to the sheep is the amount of the actual damage not exceeding the stipulated valuation per head.

9. Under Civil Code, Sections 2876, 2877, 2912, a common carrier cannot by special contract limit its liability for delay in the transportation of property arising from its own or its servants' negligence.

10. Where a statute is taken from another state it is taken subject to the interpretation placed upon it by the courts of that state, and this doctrine applies when a portion of the common law is enacted as a part of the statute.

11. Where property delivered to a carrier for transportation is injured as a result of negligent delay on the carrier's part, the shipper, free from negligence on his part, is entitled to compensation for the damages sustained by reason of such delay.

12. Where animals delivered to a common carrier for transportation are injured during the transportation, and there is no evidence to show that the animals were injured from an inherent want of vitality, or by reason of injuries inflicted on each other, or by unavoidable accident, the carrier has the burden of proving that the injuries were occasioned by some other cause than its own negligence, though the shipper accompanies the shipment.

13. In an action against a common carrier for injuries to sheep transported by it caused by its negligent delay in their transportation and by exposing

them to severe weather, defendant's witnesses testified that they informed plaintiff at the time of shipment that the worst blizzard ever known was prevailing along its line of road. Plaintiff denied receiving this information. *Held,* that the evidence warranted an instruction that if the carrier, at the time of accepting the shipment, knew of the storm along its line, and did not inform plaintiff thereof, it could not excuse the delay by showing that its track was obstructed by snow blockades.

14. A common carrier receiving property for transportation with knowledge of the existence of an obstruction on its road, and without informing the shipper, cannot offer the obstruction as an excuse for not making a prompt delivery thereof, though the obstruction is the act of God; and it is bound to take notice of the signs of approaching danger liable to create obstructions, if any are known to it.

15. A special contract with a railroad company for the transportation of property required that in case of loss or claim for damages the shipper should give notice in writing to it. The railroad received information of the injury to the property by letter, and the railroad department called for information regarding the same shortly after the shipment was made. *Held,* a sufficient notice when not objected to.

16. Where the evidence is conflicting, the verdict, or finding, will not be disturbed.

17. In an action against a common carrier for injuries to sheep transported by it, caused by negligent delay in their transportation and by exposing them to severe weather, the shipper testified that there was a shrinkage of the sheep during the transportation of 33 pounds per head, or 25 pounds in excess of a reasonable shrinkage; that it was necessary to feed them four days at the place of delivery before selling them, while feeding them once only might have been necessary if they had been delivered in good condition; that the cost of so feeding them was $240, and the cost of one feeding was $40; that the sheep were weighed before and after they were fed this extra $200 worth of food. It did not appear which of these weights was taken as the basis of calculation in ascertaining the shrinkage. *Held,* that an instruction authorizing a recovery of the expenses for feeding rendered necessary by reason of the condition of the sheep at the place of delivery was erroneous, as allowing double damages.

*Appeal from District Court, Lewis and Clarke County; H. C. Smith, Judge.*

ACTION by H. H. Nelson against the Great Northern Railway Company. From a judgment for plaintiff, and from an order overruling defendant's motion for a new trial, defendant appeals. Reversed, unless plaintiff consents to modification by deducting certain sum from amount recovered.

*Mr. I. Parker Veazey,* for Appellant.

As to the nature of the complaint, and the cause of action set up therein, see Hutchinson on Carriers, Secs. 738-747; *City of Great Falls* v. *Hanks,* 21 Mont. 83; *Stark* v. *Wellman,* 96

Cal. 400; *Sanford* v. *Am. Dist. Tel. Co.,* 34 N. Y. Supp. 144; *Rothschild* v. *Grand Trunk Ry. Co.,* 10 N. Y. Supp. 36.

In the court below the plaintiff broadly contended that it was never necessary for the shipper to declare in the first instance upon the contract of shipment; that the shipper might always count upon a breach of duty imposed by law; that if any actual contract were pleaded and shown by the defendant to exist the same could never defeat the plaintiff's action in such case. It was conceded and so ruled by the court that the plaintiff could not recover contrary to the valid provisions of such contract, when the latter was admitted or proven, but contended that he might recover in so far as upon the merits of the whole transaction he would have been authorized to recover had the contract been set up in the complaint instead of in the answer. This view, as applied to the facts of this case, violates fundamental rules of the law of pleading. It involves an abandonment of the ground of liability upon which the action was rested and the substitution of another therefor. In other words, a departure from fact to fact and from law to law. Every cause of action must be rested upon some duty shown to exist and a breach of the same. Legal identity of the cause of action established by the evidence and that pleaded must be preserved or there is a fatal variance. The substitution of a new ground of liability in point of law for that upon which the complaint is founded is a departure. (*Union Pac.* v. *Weyler,* 15 Sup. Court Rep. 879.)

A common carrier is ordinarily liable as an insurer. This liability and the extent of it is defined in Section 2910 of our Civil Code. Where the shipper accompanies the shipment the rule of the common law is very well expressed in the case of *St. Louis I. M. & S. Ry. Co.* v. *Weakly,* 8 S. W. Rep. 140, and the language of Section 2910 shows clearly that there is no intent to abrogate this rule. (*Railroad Co.* v. *Hedger,* 9 Bush. 645, 651; *Clark* v. *Railway Co.,* 64 Mo. 441, 448; *Harvey* v. *Rose,* 26 Ark. 3; *Railway Co.* v. *Reynolds,* 8 Kan. 623, 641.)

In the case at bar examination of the contract will disclose

that it undertakes to regulate the damages to some extent by fixing the value of the property and establishes a condition precedent to the institution of any suit for the recovery of damages; that it imposes upon the plaintiff the performance of certain duties which are ordinarily imposed by law upon the defendant; that it relieves the defendant from liability as an insurer; and, as I think, that it relieves the defendant from liability for the ordinary negligence of defendant, its agents, servants and employes. (*Hall, Executor, v. Pa. Co.,* 90 Ind. 459, 16 Am. & Eng. R. R. Co., 165 ; *Bartlett v. P. C. & St. L. Ry. Co.,* 94 Ind. 281; 18 Am. & Eng. R. R. Cases, 549 ; *Kimball v. Rutland, etc. Ry. Co.,* 26 Vt. 247, 62 Am. Dec. 567 ; *Newell et al. v. Nicholson et al.,* 17 Mont. 389, 43 Pac. 180 ; *N. Y. Mfg. Co. v. Ill. Cent. Ry. Co.,* 3 Wallace, 107, Book 18. 70 and 73, U. S. ; *Austin v. Manchester, etc. Ry. Co.,* 5 Ency. L. & Eq. 329 ; Ray, Negligence of Imposed Duties, Freight Carriers, p. 95-96 ; *Latham v. Rutley,* 2 Barn. & C. 20 ; *Austin v. Manchester S. & L. Co.,* 15 Jur. 670 ; *Davidson v. Graham,* 2 Ohio St. 131; *Ferguson v. Cappeau,* 6 Harr. & J. 394; *Stump v. Hutchinson,* 11 Pa. 533 ; *Indianapolis, etc. R. R. Co. v. Remmey,* 13 Ind. 518; *Jeffersonville, etc. R. R. Co. v. Worlund,* 50 Ind. 339; *Hall v. Pa. Co.,* 90 Ind. 459; *Lake Shore, etc. Ry. Co. v. Bennett,* 89 Ind. 457.)

The stipulation in the contract as to value was valid in law and affected the amount of plaintiff's recovery. (*Hart v. Pa. Ry. Co.,* 112 U. S. 331-345 ; *Pierce v. So. Pac. Ry. Co.,* 52 Pac. 302 ; *Ells v. St. Louis, etc. Ry. Co.,* 52 Fed. 903.)

The contract stipulation for exemption from damages sustained by delay relieves the carrier from liability for the ordinary negligence of itself or employes. (*Cragin v. N. Y. C. R. R. Co.,* 51 N. Y. 61.)

Even at the common law, where it appears as a fact that the damages were immediately caused by an act of God or the public enemy, there is then no presumption of negligence upon the part of the carrier. Such facts being found, the carrier is not liable unless guilty of negligence, and negligence of the de-

fendant being the gist of the plaintiff's cause of action, it must be established by him. (*Railway Co.* v. *Reeves,* 10 Wall. 189-190; *Davis* v. *Wabash, etc. Ry. Co.,* 1 S. W. 327; *St. Louis, etc. Ry. Co.* v. *Weakly,* 8 S. W. 141.)

Where a special contract is entered into by which the carrier is relieved from its liability as an insurer as to damage occurring through specified causes and the evidence shows the damage to have been sustained by one of the enumerated causes, the burden is upon the shipper to show negligence upon the part of the carrier. (*Lamb et al.* v. *Camden & Amboy Ry. Co.,* 46 N. Y. 272; *Cochran* v. *Densmore,* 49 N. Y. 276.)

Instruction number seven violates a rule of practice and is also open to the further objection that it is positively erroneous in its statement of the matters which may be considered by the jury in determining the question of negligence. The instruction is bad because of its comment upon the evidence and the manner in which certain facts, or alleged facts, are culled out from a mass of other facts in the case and given special prominence. (*Wastl* v. *Montana Union Ry. Co.,* 42 Pac. 773; *Hulburt* v. *Boaz,* 23 S. W. 447.)

A verdict should have been directed for the defendant for the reason that no compliance on the part of the plaintiff was shown with the stipulation of the contract requiring him to give notice in writing of his claim. Irrespective of the statute the stipulation is perfectly valid at the common law. (*Express Co.* v. *Caldwell,* 21 Wall. 264; *Sprague* v. *Mo. Pac. Ry. Co.,* 8 Pac. 465; *Wichita & W. Ry. Co.* v. *Koch,* 28 Pac. 1013; *Louisville, etc. Ry. Co.* v. *Widman,* 37 N. E. 554; *Express Co.* v. *Harris,* 51 Ind. 127; *Insurance Co.* v. *Duke,* 43 Ind. 418; *Railway Co.* v. *Morris,* 16 Am. Eng. R. Cases, 259.)

*Mr. G. M. Nelson, Mr. W. G. Downing,* and *Mr. H. G. McIntire,* for Respondent.

The complaint in this action is one on the case. (*Bowers* v. *R. & D. R. R. Co.,* 107 N. C. 721; *Rideout* v. *M. L. S. & W. R. Co.,* 81 Wis. 237; *Brown* v. *C. M. & St. P. R. Co.,* 54 Wis.

342; *Nelson* v. *Harrington,* 72 Wis. 591; *Wood* v. *C. M. & St. P. Ry. Co.,* 32 Wis. 398; *Smith* v. *C. & N. W. Ry. Co.,* 49 Wis. 443; *Stockton* v. *Bishop,* 45 U. S. 155; *Flynn* v. *H. R. K. R. Co.,* 6 How. Pr. 308; *Bank of Orange* v. *Brown,* 3 Wend. 158; *Heil* v. *St. L. I. M. & S. Ry. Co.,* 16 Mo. App. 363.)

There are certain limitations and exceptions to defendant's common-law liability. If it desires to avail itself of them it must plead and prove them in defense. The special contract merely extends these limitations and exceptions, which it must take advantage of in the same manner as it takes advantage of those created for it by the law itself. The fact that it has created them, instead of the law, does not change the rule. (Hutchinson on Carriers, 2d Ed., Secs. 748, 749; 3 Ency. Pl. & Pr. p. 823; *Clark* v. *S. L. K. C. & N. W. Ry. Co.,* 64 Mo. 440; *M. St. P. & S. S. M. Ry. Co.* v. *Home Ins. Co.,* 64 Minn. 61; *Nicoll* v. *E. T. V. & G. Ry. Co.,* 89 Ga. 260; *Witting* v. *St. L. & S. F. Ry. Co.,* 28 Mo. App. 110; *Oxley* v. *St. L. etc. Ry. Co.,* 65 Mo. 629; *W. St. L. etc. Ry. Co.* v. *Pratt,* 15 Ill. App. 177; *Coles* v. *Louisville, etc. Ry. Co.,* 41 Ill. App. 606; *Arnold* v. *I. C. R. R. Co.,* 83 Ill. 273; *I. C. R. R. Co.* v. *Phellps,* 4 Ill. App. 238; *W. St. L. & P. Ry. Co.* v. *McCasland,* 11 Ill. App. 491; *Wiggins Ferry Co.* v. *Blakeman,* 54 Ill. 201; *City of Champagne,* v. *McMurray,* 76 Ill. 358; *W. St. L. & P. Ry. Co.* v. *Black,* 11 Ill. App. 465; *Mechalitsche* v. *Wells Fargo Co.,* 118 Cal. 687.)

"Where the stipulation limits the liability of the carrier in any event to a named sum, in case of loss of the property shipped, and no loss occurs, but the property is injured, the shipper is entitled to recover damages for the injury up to the amount named, although the injured property may still be valuable. The effect of the stipulation is not to fix a limit in case of loss and a proportionate limit in case of injury, but to fix an amount which shall be the limit of recovery, whether for loss or for injury." (5 Am. & Eng. Ency. of Law, 2d Ed. p. 335; *Sparnes* v. *Railroad,* 91 Tenn. 516; *Hart* v. *Pa. R. R. Co.,* 112 U. S. 331; *Shea* v. *M. St. P. etc. Ry. Co.,* 63 Minn. 228.)

"The rule is unquestioned that it is as much a part of the common carrier's duty to carry and deliver with reasonable promptness, as it is to receive and carry." (5 Am. & Eng. Ency. of Law, 2d Ed. 244.) "A reasonable time is such a time as a man of ordinary diligence and dispatch would require for the transportation of his own goods under similar circumstances." (5 Am. & Eng. Ency. of Law, 2d Ed. 246.) "The question as to what is such reasonable time is, therefore, under ordinary circumstances, for the jury to determine." (5 Am. & Eng. Ency. of Law, 2d Ed. 247.) "The character of the property being carried is an important circumstance in determining what is a reasonable time, and owing to the harmful results likely to follow the tardy transportation of cattle or other live stock, carriers of such property are held to a stricter measure of duty than carriers of merchandise." (5 Am. & Eng. Ency. of Law, 2d Ed. 450.) "The general rule is that a carrier cannot limit his liability for delay, except by special contract with the shipper, and that in no event can it limit its liability for delay resulting from its own negligence." (5 Am. & Eng. Ency. of Law, 2d Ed. 258; *A. T. & S. F. Ry. Co.* v. *Dittman,* 3 Kan. App. 459; *Branch* v. *W. R. R. Co.,* 88 N. C. 573; *Pierce* v. *S. P. Ry. Co.,* 47 Pac. Rep. 876; *Leonard* v. *Chicago R. R. Co.,* 54 Mo. App. 293.)

The rule that the carrier may not limit his liability for delay arising from his negligence follows from the general rule that the carrier may not limit his liability as against his negligence of any description,—a rule which prevails in the federal and in all the state courts, except those of New York (which alone permits the carrier to limit his liability against his own negligence), and of Illinois and Wisconsin, which permit the carrier to limit his liability except against his gross negligence. (5 Am. & Eng. Ency. of Law, 2d Ed. 288, 307, 308, 313 and 315.)

The common carrier may not by contract confine his liability to damages resulting from his gross negligence, or from his willful negligence. (5 Am. & Eng. Ency. of Law, 2d Ed. 459;

*N. Y. R. R.* v. *Lockwood,* 17 Wall. 357; *Shriver* v. *Sioux City R. R. Co.,* 24 Minn. 506; *Moulton* v. *St. P. Ry. Co.,* 31 Minn. 85; Hutchinson on Carriers, Secs 260 and 263; *Alabama R. R.* v. *Thomas,* 83 Ala. 343; *Railway Co.* v. *Harris,* 67 Tex. 166; *Root* v. *Ry. Co.,* 83 Hun. 111; *Orby* v. *Ry. Co.,* 65 Mo. 632; *Read* v. *Ry. Co.,* 60 Mo. 199.)

Defendant suggests that a presumption of negligence on its part cannot obtain in this case, as that only applies in cases where the defendant has complete control of the shipment, while in this case the shipper was to accompany and control it. This is not the law. (*A. T. & S. F. Ry. Co.* v. *Dittman,* 3 Kan. App. 459; *Leonard* v. *C. R. R. Co.,* 54 Mo. App. 293.)

The court did not err in giving instruction No. 6¾. (Hutchinson on Carriers, 2d Ed. Secs. 292, 310, 311; 5 Am. & Eng. Ency. of Law, 2d Ed. page 430; *Corbett* v. *St. P. M. & O. Ry. Co.,* 86 Wis. 82; *Maghee* v. *C. & A. T. Co.,* 45 N. Y. 512; *McGraw* v. *Baltimore R. R. Co.,* 18 W. Va. 361; *Hewitt* v. *Chicago R. Co.,* 63 Ia. 611; *Lamont* v. *R. R. Co.,* 9 Heisk (Tenn.), 58; *Fox* v. *R. R. Co.,* 148 Mass. 220; 5 Am. & Eng. Ency. of Law, 2d Ed. 255; *Express Co.* v. *Jackson,* 92 Tenn. 326.)

Defendant's contention that plaintiff is not entitled to recover by reason of failure to give notice in writing of his claim for the injuries complained of, is not well founded. (5 Am. & Eng. Ency. of Law, 2d Ed. 324, 326; *Westcott* v. *Fargo,* 61 N. Y. 542; *Central Co.* v. *Pickett,* 87 Ga. 734; *Wabash Ry.* v. *Brown,* 152 Ill. 484; *Hess* v. *N. P. Ry.,* 40 Mo. App. 202; *B. & O. R.* v. *Cooper,* 66 Miss. 558; *Kansas R.* v. *Ayers,* 63 Ark. 331; *Owen* v. *Louisville R.,* 87 Ky. 626.)

MR. COMMISSIONER POORMAN prepared the opinion for the court.

This action is brought to recover damages claimed to have been sustained by the plaintiff as a shipper of live stock over defendant's line of railroad. The pleadings filed by the parties

are substantially as follows, in so far as it is necessary to consider the same and the questions raised in this case:

The first three allegations of the complaint are to the effect: That plaintiff is a resident of Montana. That defendant is a corporation duly incorporated, and was at the time operating a line of railroad from the city of St. Paul westward through the states of Dakota and Montana into the city of Seattle. That the defendant was a common carrier, transporting merchandise and live stock, for hire, over said line of road, and over other lines of road between the city of St. Paul, Minn., and Chicago, Ill.   (4) That it was the duty of defendant to provide suitable cars for the transportation of live stock when requested so to do.   (5) That prior to the 16th day of November, 1896, the defendant promised, as such common carrier, to provide cars and to transport for plaintiff from Culbertson, Mont., to Chicago, Ill., 2,889 head of sheep on said day.   (6) That at Culbertson, on November 16, 1896, the plaintiff delivered to defendant the said sheep, and that the same were in sound and marketable condition; that the defendant then and there received the same as such common carrier, and promised, for a certain reward, to transport the same to the city of Chicago.   (7) That defendant, as such common carrier, promised to transport the said sheep with all due and reasonable speed, and within the usual and customary time required for such transportation.   (8) That it was the duty of defendant, as such common carrier, to complete said transportation within four days, and that the same could have been done with the exercise of due and reasonable diligence.   (9) That defendant, in disregard of its duties as such common carrier, willfully, wrongfully, and negligently kept and detained said sheep at said Culbertson until the 26th day of November, 1896.   (10) That on November 26, 1896, a violent storm was prevailing along the line of said railway, which was known to the defendant; that it was then known to the defendant that it could not safely transport and carry said sheep, and that defendant's line of road was obstructed and blockaded; that defendant willfully, negligently,

and wrongfully caused the said sheep to be loaded into its cars at Culbertson, of which the plaintiff had no notice or knowledge. (11) That defendant, disregarding its duties as such .common carrier, willfully, wrongfully negligently, and carelessly delayed the said sheep and the train from time to time along said route, and wrongfully and negligently exposed the same to severe cold weather, and negligently refused and failed to protect said sheep. (12) Said sheep, being so improperly and unnecessarily delayed by the negligent acts of defendant, never reached said city of Chicago, but were delivered to plaintiff at South St. Paul. (13) That by reason of the careless and negligent acts of defendant 40 of said sheep died, and that they were worth $3.15 per head at the point of shipment. (14) That the balance of said sheep, by reason of the negligence of defendant, suffered very great injury, and were reduced in value, to the plaintiff's damage in the sum of $4,052.67. (15) That plaintiff was damaged in the sum of $396 by reason of the extra care and expenses in caring for said sheep, and that said expense was occasioned solely by the negligence of the defendant. (16) That by reason of the willful, wrongful, and negligent omissions of defendant, plaintiff was damaged in the sum of $4,574.67. Plaintiff prays judgment for said sum.

To this complaint the defendant filed an answer admitting the allegations of the first three paragraphs, and denying *in toto* paragraphs 5, 6, 7, 8 and 9. Defendant further admitted the occurrence of the storm referred to in the complaint, and that its line of road was obstructed between Culbertson and St. Paul, but alleges that the same was known to plaintiff at the time said sheep were loaded; denies that defendant loaded the sheep, but alleges same were loaded by plaintiff. The special contract is then set up in the answer entered into between the parties on the day of shipment, providing in substance as follows: Admitting the receipt of the sheep by the defendant upon the terms and conditions of this contract, and that the same were accepted by the shipper as just and reasonable in consideration that the first party will transport the live stock

at the rate named, and furnish transportation as provided in the regulations. (1) "That said railway company shall not be liable for the loss or death of, or for any injuries received by, any such stock, unless the same is immediately caused by the actionable negligence of said company, its agents, servants, or employes." (2) That said party agrees to load, unload, and reload at his own expense and risk, and to feed, water and tend the same at his own expense and risk, while in the stockyards of defendant awaiting shipment, or while the cars are at feeding or transfer points. (3) Said second party assumes all risk of loss resulting from the failure of defendant to water said sheep when such failure is caused by the freezing of water pipes, and assumes all risk of damage from any failure in feeding, watering, or tending said stock, of whatsoever nature or kind, not resulting from negligence of defendant. (5) Said second party accepts the cars provided for transporting said stock as being sufficient therefor, and assumes all risk of damage by reason of delay in such transportation not resulting from the willful negligence of the said railway company or its agents. (6) In case of loss or claim for damage said second party shall give notice in writing to defendant within fifteen days after such loss or damage has occurred. (7) "And it is hereby further agreed that the value of the live stock so transported under this contract shall not exceed the following mentioned sums: Each sheep two and 50-100 dollars; such valuation being that whereon the rate of compensation to the railway company for its services and risk connected with said property is based." (8) Such values being the true values of such live stock, and this contract being entered into relying upon such values so given, as being the just and true values. (10) Provides that defendant shall not be liable beyond the line of its own railway, and that this contract shall inure to the benefit of each and every carrier beyond the route of said first party; and that shippers are required to state actual value at the time and place of shipment. In case of loss the company will only be liable for the value so given. Defendant further alleges that this was the only con-

tract entered into relative to the shipment of said stock, and that the same was accepted under the terms of said contract; but that it was finally agreed that the sheep should be delivered to plaintiff at South St. Paul, instead of at Chicago. Defendant further alleged that it fully complied with and performed all the terms and conditions of said contract, that it was not guilty of negligence in any manner, and that the injury and death of said sheep were caused by the negligence of the plaintiff. Defendant then sets up a counterclaim of $160 as advance charges for hay alleged to have been furnished in the feeding of said sheep. Defendant further alleged that in pursuance of said contract it furnished free transportation for four men to accompany said sheep and to care for the same.

To this answer the plaintiff filed a replication denying the facts therein stated.

At the trial of the case special questions were submitted to the jury, on which they found: (a) That the injury to the sheep in question was attributable to the fact that they were exposed to cold and stormy weather. (b) That said injury was caused by such exposure. (c) That the same was attributable to the negligence of defendant. (d) That defendant did not notify plaintiff of the prevalence of a storm along the line of its railway. (e) That when the sheep reached South St. Paul they had not shrunk or suffered materially from lack of food. (f) That the train dispatcher was guilty of gross negligence in delaying the train at Williston.

A verdict was rendered for plaintiff for $2,424.67. Judgment was entered thereon. From this judgment and the order of the court overruling defendant's motion for a new trial defendant appeals.

It was established at the trial that plaintiff did load the sheep on the cars at Culbertson, that he did enter into the contract set up in defendant's answer, and that the sheep were turned over to him at South St. Paul with his consent.

1. The trial court held this complaint to be one in tort, rather than on contract, and permitted plaintiff to introduce

evidence to establish a cause of action upon that theory. This the defendant assigns as error, claiming that the complaint sets up a special contract, and that the action is one *ex contractu,* and not *ex delicto.*

·This objection strikes at the very foundation of the action, and will be first considered. That actions on contract and actions in tort cannot be united is elementary. ·The one·is based upon the violation of a contract made by the parties thereto; the other is based upon the violation of duties and obligations determined, not from the form or contents of any contract, but from the policy of the law. If this complaint is based upon a private contract, of which the parties, and not the policy of the law, are the authors, this action must fail, for no such private contract was proved. And in this we are considering the complaint alone, and not the subsequent pleadings. In actions by· a shipper against a common carrier for violations of a special contract of shipment, it is necessary for the complaint to set out the contract either in substance or in *haec verba,* and to declare upon it. And where the action is in tort, based upon a violation of the carrier's common-law duty, it is still necessary for the plaintiff to state facts which show, not only his rights, but the duties of the carrier, in the premises, before he can complain of any breach of duty on the part of the carrier. Both these forms of action are, in effect, based upon violations of contracts. The one upon the violation of an express contract made by the parties themselves is called an action *"ex contractu,"* and where it is sought to combine in the same action charges against the carrier for violations of a special contract and also for violations of his common-law duties, the action is called *"ex delicto quasi ex contractu."* The other form of action, based upon violations of the implied contract declared by law, is called an action *"ex delicto,"* or in tort.

It is frequently difficult to determine from an examination of the complaint whether the action is on contract or in tort; that is, whether it is meant to charge the carrier with a violation of the express contract made by the parties, or a violation

of the implied contract made by the law. The statute, in abolishing all forms, and requiring actions to be brought on the "facts constituting the cause of action," have increased, rather than diminished, this difficulty, by removing the guide furnished by the *indicia* of the common-law forms. The implied contract created and declared by law relative to the duties and liabilities of a common carrier is so complete within itself that there is little necessity for any additional contract between the parties, unless the carrier desires to limit his liability; and so usual is it for shippers to rely upon this contract created by law in actions against carriers that it has been held that "tort is the natural and habitual foundation of an action for the breach of the ordinary contract of carriage, and the declaration will be so construed unless the facts of the case clearly show that the plaintiff has elected to sue on the contract." (*Whittenton Mfg. Co.* v. *Memphis & O. R. P. Co.* (C. C.), 21 Fed. 896, and cases there cited.)

The question here under consideration was discussed at some length in the case of *New Jersey Nav. Co.* v. *Merchants' Bank,* 6 How. 344, 12 L. Ed. 465, and the general result there reached was that, notwithstanding there was in that case a suit founded upon a special contract of carriage, yet in the very nature of the action it was such that, essentially, whatever its form, it was founded in tort.

In *Bryant* v. *Herbert,* 3 C. P. Div. 189, the same rules of discrimination were applied in testing the form of an action, but with a contrary result. Justic Hammond, in commenting on the decisions in the last two cases cited, says: "These two cases establish that in solving a question like this we are to look to the requisite nature of the remedy the plaintiff is entitled to on the fact he states, rather than any form his declaration may assume; though, of course, we cannot wholly disregard the form of the declaration." (*Whittenton M. Co.* v. *M. O. R. P. Co., supra.*)

It has been decided that a mere averment of a promise, or the use of the words "agreed, understood, or promised," does

not make the declaration one in contract; but the averment must be one of promise, and a consideration therefor, to make it a count on contract. (*Whittenton M. Co.* v. *M. O. R. P. Co., supra;* 3 Enc. P. & P. 822.)

There may be an averment of a consideration for assuming the duty imposed by law as a matter of inducement, and as showing a compliance by the shipper with his duty in this regard, for the carrier is under no obligation to transport goods gratuitously. Wherever the gravamen of the complaint is solely for a neglect of duty imposed upon the carrier by law, the action is in tort. And even where there is a special contract varying and limiting the carrier's common-law liability, the plaintiff has an election to bring his action on the contract or to sue in tort for damages for negligence. (3 Enc. P. & P. 821, 822, and cases cited.)

There can be no uncertainty as to the cause of action set forth in this complaint. It is based upon a violation of the defendant's duties as a common carrier. The complaint is given in substance in the statement of facts, and, when examined in the light of the authorities herein cited, we believe that but one conclusion can be reached. Complaints similarly drawn have been held to state causes of action *ex delicto* in the following cases: *Bowers* v. *R. & D. R. R. Co.,* 107 N. C. 721, 12 S. E. 452; *Rideout* v. *M., L. S. & W. R. Co.,* 81 Wis. 237, 51 N. W. 439; *Nelson* v. *Harrington,* 72 Wis. 591, 40 N. W. 228, 1 L. R. A. 719, 7 Am. St. Rep. 900; *Smith* v. *C. & N. W. Ry. Co.,* 49 Wis. 443, 5 N. W. 240; *Stockton* v. *Bishop,* 4 How. 155, 11 L. Ed. 918; *Flynn* v. *H. R. R. R. Co.,* 6 How. Prac. 308.

2. The appellant claims that the court erred in not sustaining its contention that there is a variance between the cause of action pleaded and that proved. This contention is based upon the theory that the defendant, being charged with liability growing out of a breach of its common-law duties, and the court having found that the special contract pleaded in defendant's answer covering this shipment was entered into by the parties, the plaintiff cannot recover, as to permit plaintiff to do so would

constitute a material variance between the cause of action pleaded and the one proved; that it would be a departure from fact to fact and from law to law—that is, that the plaintiff, in recovering, would be recovering upon the special contract set up in the answer, instead of the implied one pleaded in the complaint. As before stated, the policy of the law declares a contract between the shipper and carrier which is complete within itself. This contract, thus declared, is ever present. True, it may be modified by special agreement, but modified only. It cannot be wholly annulled. It is the policy of the law, growing out of the character and necessity of the employment of the common carrier. It is equally binding upon the shipper and carrier, and cannot be modified except as permitted by provisions of law. Ordinarily, a written contract between parties includes the entire subject-matter, and furnishes the whole measure of liability and obligation upon each side. But this is not necessarily so in the case of a contract between a shipper and a carrier, and it is seldom that a written contract can cover the whole subject-matter of their respective rights and obligations, for the reason that duties are imposed by law upon the carrier which cannot be affected by stipulation. The special contract may touch upon only a few of the grounds upon which an action may be based, and such is the case with the special contract set out in the answer. It does not, if such could be done, change or attempt to change the relation from common carrier to private carrier. Suppose the special contract entered into between the shipper and the carrier provides that the shipper shall attend, water, and feed the stock. This relieves the carrier from all duty and obligation respecting these particular matters, but does not relieve it of the duty imposed by law of properly handling its trains, and of affording reasonable facilities for enabling the shipper to give the stock proper care and attention. The carrier, through its negligence, either ordinary or gross, does not handle its trains in a proper manner, does not afford these facilities, and damage results therefrom. In such a case, must the shipper bring his action on the special contract? Can he maintain an

action on the contract for the violation of duties with respect to which the contract is wholly silent? The answer to this latter question is obvious. The shipper could not maintain an action for the violation of certain terms and provisions of a contract unless those terms and provisions were a part of the contract, and under the theory advanced by the appellant he could not maintain an action on the case for the reason that a special contract existed. He would, therefore, have no redress. Every cause of action must rest upon some duty shown to exist and a breach of the same. Where the action is based upon the violation of the terms of a special contract, defendant cannot be held liable for any acts of commission or omission not therein incorporated or included. Consequently there could be no breach of duty. To give the shipper any right of action in such a case, it would be necessary that the special contract be to that extent ignored. The carrier must be charged with the violation, not of the terms of a special contract, but with the violation of the duties imposed upon it by law. A carrier, in accepting shipments, always accepts them subject to the liabilities imposed by law. The only way in which it can at all vary or limit this liability is by special contract. The effect of the special contract is, therefore, merely to create and define certain cases and conditions under which its full common-law liability shall not attach. The special contract is the evidence of such exception, and to the extent to which it is valid constitutes a defense, and as such must, therefore, be pleaded as a defense; the burden of proof resting on the defendant to establish it. (*Atchison, Topeka & S. F. Railroad Co.* v. *Ditmars,* 3 Kan. App. 459, 43 Pac. 833.) The plaintiff consequently recovers from the defendant, if recovery is had, by reason of its common-law liability as a carrier, notwithstanding the special contract, unless the defendant shall, as a matter of defense, show that it has escaped its common-law liability under and by reason of the contract.

The special contract is pleaded as a defense, and not in bar. We are aware that the decisions on this question are somewhat

at variance, but believe the better rule to be that the existence
of a special contract for the shipment of live stock, with stipu-
lations therein exempting the carrier from certain liabilities,
is no obstacle to the maintenance of an action in tort, based upon
the violations of the carrier's common-law liabilities, and that
the plaintiff has an election to bring his action on the contract
or in tort for damages arising from a violation of the carrier's
duties.   (*Nicoll* v. *East. Tenn. etc. Ry. Co.,* 89 Ga. 260, 15 S.
E. 309; 3 Enc. P. & P. 823; *Witting* v. *St. Louis & S. F. Ry.
Co.,* 28 Mo. App. 110; *Coles & Co.* v. *Louisville, etc. Railroad
Co.,* 41 Ill. App. 607; *Arnold* v. *I. C. R. R. Co.,* 83 Ill. 273, 25
Am. Rep. 386; *Clark* v. *St. Louis, etc. Ry. Co.,* 64 Mo. 440;
*Minneapolis, St. P. etc. Ry. Co.* v. *Home Ins. Co.,* 64 Minn.
61, 66 N. W. 132; Hutchinson, Carriers, Secs. 748, 749; *City
of Champaign* v. *McMurray,* 76 Ill. 358; *Michalitschke* v.
*Wells, Fargo & Co.,* 118 Cal. 687, 50 Pac. 847.)

3.   Defendant next assigns as error the refusal to give its
requested instructions Nos. 1, 2, 3, and 4.   Evidence was ad-
mitted relative to the agreement or duty of the defendant to
provide cars on the 16th day of November, 1896, for transport-
ing the sheep, and as to the care and feed of the sheep at Cul-
bertson between that day and the time of shipment on Novem-
ber 26th; and also as to the conversation had between the plain-
tiff and one J. W. Donovan, train dispatcher at Great Falls.
This testimony was permitted to go in without objection, until
the plaintiff, then testifying as a witness in his own behalf, was
asked as to whether, while at Culbertson,, he was put to any
expense in connection with the keeping and care of the sheep
that would not have been incurred had the shipment been made
as soon as they were delivered there.   This evidence was ob-
jected to, and the court then held the action to be in tort, and
that defendant was not liable for any loss or damage prior to
the day when the sheep were loaded on defendant's cars.   Sub-
sequent to this ruling the court permitted plaintiff, over the
objection of the defendant, to testify as to damages sustained
by reason of the shrinkage of the sheep while at Culbertson,

and prior to November 26th, the date of loading; the plaintiff testifying that he had suffered damage in the sum of $356.12 by reason of such shrinkage. On cross-examination counsel for defendant asked the witness substantially the same questions relative to his conversation with Donovan, and as to the care and feed of the sheep at Culbertson prior to the day of shipment.

These requested instructions are, in substance: (1) That defendant never agreed to have cars at Culbertson on November 16th. (2) That defendant was not charged with any duty to have cars at Culbertson on November 16th, and the jury cannot allow plaintiff damages by reason of the failure of defendant to furnish cars on that day. (3) The defendant was not to blame for shrinkage prior to November 26th, and is not responsible therefor. (4) That the evidence does not justify recovery of damage on account of any act of defendant prior to the time of loading. The court refused to give these instructions, but, in lieu thereof, instructed the jury as follows: "You will disregard the claim of the plaintiff of $356.12 for damages alleged to have been sustained by the sheep while at Culbertson, as plaintiff cannot recover for that under the allegations of this complaint." This instruction withdrew from the consideration of the jury all damage sustained prior to the loading of the sheep on the defendant's cars, and was, in our judgment, amply sufficient to protect the defendant, and to inform the jury that the plaintiff was not entitled to anything on account of expense or shrinkage while the sheep were at Culbertson.

Defendant claims that it was acting on the theory that the action was on contract, and was misled thereby, and permitted the evidence to go in without objection. Conceding this to be a fact, plaintiff cannot be prejudiced by reason of defendant's error in taking the wrong theory of the case. The plaintiff had a right to show the condition of these sheep at the time they were shipped. Introducing evidence as to the treatment and food received immediately prior to the shipment was one way of showing it. Whether the correct way or not, it was done

without objection, and we fail to understand how defendant was prejudiced thereby under this instruction.

4. The action of the court in giving its instructions Nos. 12, 13, and 15, and in refusing to give defendant's requested instructions Nos. 10, 11, and 13, is next assigned as error. The instructions given were framed upon the theory that, notwithstanding the valuation of $2.50 per head, placed upon the sheep at the point of shipment by paragraph 7 of the special contract, plaintiff was entitled to recover the full amount of damage sustained by reason of injury, not exceeding that amount per head.

At common law the carrier is liable for the full amount of the damage resulting from his negligence. This liability may be limited by an express agreement made between the shipper and the carrier at the time of the delivery of the goods for transportation, provided the limitation be such as the law can recognize as reasonable, and not inconsistent with sound public policy. (*Hart* v. *Pa. R. R. Co.,* 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717; *Express Co.* v. *Caldwell,* 21 Wall. 264, 22 L. Ed. 556; *Squire et al.* v. *N. Y. Cen. R. R. Co.,* 98 Mass. 244, 93 Am. Dec. 162.) And where the parties have, by stipulation, fixed upon a value of the property, such stipulation has the effect of limiting the liability of the carrier, and is, to that extent, a defense to an action for damages.

The value of the stock at the place of shipment and its value at the place of destination may be, and usually are, different. The costs of transportation paid by the shipper would seem to indicate that in such amount, at least, the stock had a greater value at the place of destination; else there would be little motive in making the shipment at all. The uncertainty of market conditions renders it difficult, if not impossible, to fix with precision the value the stock will have when the place of destination is reached. The value then agreed upon, unless the stipulation provides otherwise, has reference to the time and place of shipment. This value so fixed, whether for the purpose of obtaining shipping rights and concessions or as the true value

of the property, has, in the absence of limitations thereto, the effect of fixing the limit to the carrier's liability, whether from loss or injury. No question is made as to the liability of the carrier for the full value of the property so fixed in case of total loss, but it is claimed that in case of injury the carrier is liable for only a proportion of the amount, taking the stipulated value as the basis of calculation. To say that the phrases "loss of property" and "injury to property" have the same signification, is to declare them synonymous, when in fact they are not. The one means a total destruction or loss of property, the other means a partial loss or destruction; and in the case of injury a value may yet remain in the property equal to or exceeding the stipulated value. The freight paid by the shipper may equal the fixed value at the point of shipment, while the increase or decrease in the market value of the stock pending the shipment may materially affect the value at the time the same passes into the hands of the consignee. The two cases are so dissimilar that the rules for the assessment of damages can hardly be the same and preserve equity between the parties.

As to whether a contract may provide that the carrier shall be liable only for the fixed value in case of total loss without a refund of the freight paid, is not here discussed or decided. The general rule on this subject is thus stated in the fifth volume (2d Ed.) of the American and English Encyclopedia of Law, at page 335: "Where the stipulation limits the liability of the carrier in any event to a named sum in case of loss of the property shipped, and no loss occurs, but the property is injured, the shipper is entitled to recover damages for the injury up to the amount named, although the injured property may still be valuable. The effect of the stipulation is not to fix a limit in case of loss and a proportionate limit in case of injury, but to fix an amount which shall be the limit of recovery, whether for loss or injury."

In *Starnes* v. *Railroad*, 91 Tenn. 516, 19 S. W. 675, the contract under which the shipment was made contained the following stipulation: "And it is further agreed that, should damage

occur for which the said party of the first part may be liable, the value at the place and date of shipment shall govern the settlement, in which the amount claimed shall not exceed for a stallion or jack $200, for a horse or mule $100, which amounts it is agreed are as much as such stock as are herein agreed to be transported are reasonably worth." The court held: "The stipulation limited the liability of the defendant to $100 (horse or mule) for each animal injured or killed, and that they should assess the damage according to the real injury caused by the carrier's negligence, in no any instance exceeding $100 per head." It adds: "The question is not 'what did each animal bring in the market in its injured condition?' but rather, 'to what extent and in what amount not above $100 was it damaged through the fault of the defendant; not what value is left in the animal, but what elements of value were wrongfully taken away?' * * * The agreement is that the carrier shall not be liable for more than the hundred dollars in case of damage; not that no liability shall attach if the horse, though injured, should sell for as much as that sum. The true measure of liability under the contract is the amount of actual damage resulting from the negligence of the carrier, in no case to exceed the sum stipulated. This is the most natural and reasonable construction of the contract; it is fair and just to both parties. A shipper will not be heard to claim or recover for damage or loss, however great, in excess of amount named in the bill of lading as the agreed value; nor will the carrier be allowed to deny liability for actual damages up to that amount. The carrier must respond for negligence up to that amount, but no further."

In *Hart* v. *Pa. R. R. Co.*, 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, the contract of shipment contained a clause to the effect that the carrier assumed a liability on the stock to the extent of $200 per head for each horse or mule shipped. One of the horses shipped was killed, another was injured. The trial court charged the jury that: "It is competent for a shipper, by entering into a written contract, to stipulate the value of his property, and to limit the amount of his recovery in case

it is lost. This is the plain agreement that the recovery shall not exceed the sum of $200 each for horses." This charge was sustained, the supreme court saying: "The limitation as to value has no tendency to exempt from liability for negligence. * * * The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater. The articles have no greater value for the purposes of the contract of transportation between the parties to that contract. The carrier must respond for negligence up to that amount."

In *St. L. I. M. & S. Ry. Co.* v. *Lesser,* 46 Ark. 236, it was held proper to insert in the contract of shipment the provision that in case of injury or partial loss the amount of damages claimed should not exceed the same proportion. The contract before us contains no such provision, and does not contain any provision from which it can be reasonably inferred that such was the intention of the parties.

We believe the true rule of damages in such cases to be that laid down in the decisions quoted and as contained in the instructions of the court now under consideration, and this we believe to be the doctrine of the federal courts as well as those of almost all of the states. (*Hart* v. *Pa. Ry. Co.,* 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, and cases there cited.)

(a) Appellant further claims that the court's instructions No. 13, found on page 130 of the record, and No. 15, on page 134 thereof, are inconsistent with each other. These instructions are merely explanatory of each other, and are not in conflict. Both are based upon the theory that for injury caused by the negligence of defendant plaintiff could recover for the full amount of injury sustained, not exceeding $2.50 per head, notwithstanding some value might still be left in the injured property. Requested instruction No. 13 is the same as the court's instruction No. 16, except as modified in accordance with the rule of law above stated; and requested instruction No. 11 is the same as the court's instruction No. 14, except the

words "gross negligence" are replaced by the word "negligence" in the instruction given. Defendant's requested instruction No. 10 is the same as the instruction given by the court in No. 12, except that in the instruction given the words "in case of loss" occur at the end thereof after the words "agreed value;" and, as these modifications accord with the view of the law herein taken, these requested instructions were properly refused.

5. Instructions Nos. 14, 15, and 18 were requested by the defendant on the theory that the contract relieved the defendant from liability resulting from delay, even though caused by its ordinary negligence. The court refused to give these instructions, and the defendant brings the question to this court.

Before inquiring into the precise terms of the special contract of shipment, it may be well to first consider the proposition as to whether it is permissible, under the law, for a carrier to limit his liability to such an extent that he may relieve himself from damages resulting from his own negligence, in the matter of delay. The statute of this state permits a carrier to limit his common-law liability to the extent therein stated. Section 2876, Civil Code, provides: "The obligations of a common carrier cannot be limited by general notice on his part, but may be limited by special contract." This section standing alone would seem to confer upon the carrier the right by special contract to limit his liability, even when guilty of gross negligence. Section 2877 of the same Code, however, provides: "A common carrier cannot be exonerated by any agreement made in anticipation thereof from liability for the gross negligence, fraud, or willful wrong of himself or his servants." This section limits the general power given the carrier by the preceding section. These two sections, construed together, give to the carrier the right by special contract to provide against liability in all cases except when it arises from his gross negligence, fraud, or willful wrong. Section 2912 of the Civil Code further provides: "A common carrier is liable for delay only when it is caused by his want of ordinary care and diligence." If this latter sec-

tion is to be construed with the other two, it is a further limitation upon the power of the carrier to contract away his liability. If it is not so construed, it would be hard to define the object of the legislature in enacting it, for it is only declaratory of rules of law already universally recognized by the courts.

It is a fundamental principle and universal rule that where a statute is taken from another state it is taken subject to the interpretation placed upon it by the courts of that state, and in principle it is difficult to understand why the same doctrine should not apply when a portion of the common law is enacted as a part of the statute. In *Baker* v. *Baker,* 13 Cal. 87, it was held that "a statute in affirmance of the common law is to be construed as was the rule by that law." This rule of construction would, perhaps, be modified by the statutory provisions that all statutes are to be liberally construed, with a view to effect their objects and to promote justice. (Section 4, Political Code; Section 4652, Civil Code.)

The very nature and necessity of the common carrier's employment, the enormity of the carrying trade, materially affect the vital interests of the entire country, and as such give to the public an interest in the rules and laws which should govern such employment. The interests of the parties primarily affected—that is, the shipper and the carrier—in any particular instance must be held to be subordinate to the welfare of the state and the community at large. The establishment of rules which will conserve the interests of the state and community, as well as the parties, is a matter of public policy; and the parties directly interested cannot be permitted, by special agreement or otherwise, to contract away these rules of law established for the conservation of public polity.

The general rule of law bearing upon this subject is stated in 5th Am. & Eng. Ency. Law (2d Ed.), 258: "The general rule is that a carrier cannot limit his liability for delay except by a special contract with the shipper, and that in no event can it limit its liability for delay resulting from its own negligence." (*Atchison, T. & S. F. R. R. Co.* v. *Ditmars,* 3 Kan. App. 459,

43 Pac. 833; *Branch* v. *Wilmington, etc. R. R. Co.,* 88 N. C. 573; *Pierce* v. *Southern Pac. Co.,* 120 Cal. 156, 47 Pac. 876, 40 L. R. A. 350; *Leonard* v. *Chicago & Alton Ry. Co.,* 54 Mo. App. 293.) In the latter case the court says: "The defendant is not to be allowed the benefit of a stipulation protecting it from its own negligence." The policy seems to be, as was expressed in *Rosenfield* v. *Peoria, etc. Ry. Co.,* 103 Ind. 123, 2 N. E. 346, 53 Am. Rep. 500, "The law will not allow a common carrier to contract to be safely negligent." The common carrier may not by contract confine his liability to damages resulting from his gross negligence, or from his willful negligence with respect to matters of delay. (5 Am. & Eng. Ency. Law (2d Ed.), 459; *Shriver* v. *Sioux City R. R. Co.,* 24 Minn. 508, 31 Am. Rep. 353; *Oxley* v. *Ry. Co.,* 65 Mo. loc. cit. 632; *Root* v. *N. Y. & N. E. R. R. Co.,* 83 Hun. 111, 31 N. Y. Supp. 357; *Missouri Pac. Ry. Co.* v. *Harris,* 67 Tex. 166, 2 S. W. 574; *Alabama, etc. R. R. Co.* v. *Thomas,* 83 Ala. 343, 3 South. 802; Hutchinson on Carriers, Secs. 260-263; *Moulton* v. *St. Paul Ry. Co.,* 31 Minn. 85, 16 N. W. 497, 47 Am. Rep. 781.)

In *Hart* v. *Pa. R. R. Co,.* 112 U. S. 338, 5 Sup. Ct. 151, 28 L. Ed. 717, the court says: "It is the law of this court that a common carrier may, by special contract, limit his common-law liability; but that he cannot stipulate for exemption from the consequences of his own negligence and that of his servants. (*New Jersey Steam Nav. Co.* v. *Merchants' Bank,* 6 How. 344, 12 L. Ed. 465; *York Co.* v .*Central R. R. Co.,* 3 Wall. 107, 18 L. Ed. 170; *Railroad Co.* v. *Lockwood,* 17 Wall. 357, 21 L. Ed. 627; *Express Co.* v. *Caldwell,* 21 Wall. 264, 22 L. Ed. 556; *R. R. Co.* v. *Pratt,* 22 Wall. 123, 22 L. Ed. 827; *Bank of Kentucky* v. *Adams Exp. Co.,* 93 U. S. 174, 23 L. Ed 372; *Railroad Co.* v. *Stevens,* 95 U. S. 655, 24 L. Ed. 535.)"

In *Railroad Co.* v. *Lockwood,* 17 Wall. 357, the court laid down the following propositions: "(1) A common carrier cannot lawfully stipulate for exemption from responsibility when such exemption is not just and reasonable in the eye of the law. (2) It is not just and reasonable in the eye of the law for a

common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants."

The power of the common carrier to limit his liability by reasonable special contract has long been recognized. The statutes of 17 & 18 Vict. c. 31, par. 7, provides, in substance, that the carrier may make such special contracts only as shall be judged to be just and reasonable by the court before which the question may arise. (*Peek* v. *North Staffordshire R. R. Co.,* 10 H. L. Cas. 473; *Gregory* v. *West Midland R. R. Co.,* 2 H. & C. 944.) But no contract is reasonable that is subversive of public policy. Section 2912 of the Civil Code is equivalent to saying that a common carrier shall be liable for damages resulting from delays caused by its want of ordinary care and diligence; that is, for ordinary negligence. This being a legislative declaration as to when the common carrier shall be liable for delay, it cannot be abridged by special contract. It is a legislative limitation upon the previous general power given to contract. This rule that the common carrier may not limit his liability for delay arising from his own negligence prevails in the federal, and, it is believed, in all the state, courts, except those of New York (which permit the carrier to limit his liability against his own negligence), and of Illinois and Wisconsin, which permit the carrier to limit his liability except against his gross negligence. The handling of the defendant's trains was a matter peculiarly within the power of the defendant. The shipper could exercise no control. He was bound to await the will and action of the carrier; and, if his stock was injured as a result of negligent delay on the part of the carrier, he is, in the absence of negligence or fault on his part, entitled to reasonable compensation for such damages as he may have suffered by reason of loss or injury to his stock.

The terms of the special contract in this case with reference to the subject now under consideration are somewhat ambiguous, but the view of the law here taken renders it unnecessary to enter into any further discussion with reference to this contract on this subject. The court committed no error in refusing to give the instructions requested.

6. The court, by its instruction No. 6, told the jury, in substance, that if the evidence did not show that the sheep in question died or were injured from some inherent want of vitality, or by reason of injuries inflicted upon each other, or by unavoidable accident, the defendant company would be liable, unless it established by a preponderance of the evidence that the death or injury was occasioned from some other cause than its negligence; that, in the absence of such proof, the law would presume negligence on the part of the carrier.

The defendant contends that, inasmuch as the agents of plaintiff accompanied this shipment, the burden was on the plaintiff to show the cause of the death and injury. This position of the defendant is untenable under the facts of this case. The fact that the shipper accompanies the stock can have no greater effect than to relieve the carrier as an insurer when the loss or injury is shown to fall within the exception named in the special contract; but in this case the complaint declares upon the carrier's common-law liability. Any exception contained in the special contract limiting this liability is a matter of defense, and the burden is upon the defendant to show that it falls within the exception. The presence of the shipper or his agents upon the train transporting the stock could not of itself have the effect of delaying the train, and could not affect the question of negligence on the part of the carrier in the matter of delay. It was the duty of the defendant to afford the shipper proper facilities for watering, feeding, tending, and caring for the stock, and to transport the stock with reasonable diligence, and with as little delay as practicable. (Edwards on Bailments (2d. Ed.), par. 581, and note.) We also cite in this connection *Atchison, T. & S. F. R. R. Co.* v. *Ditmars,* 3 Kan. App. 459, 43 Pac. 833; *Leonard* v. *Chicago & Alton Ry. Co.,* 54 Mo. App. 293; 22 Am. Law Rev. 214 *et seq; Witting* v. *St. L. & S. F. Ry. Co.,* 101 Mo. 634, 14 S. W. 743, 10 L. R. A. 602, 20 Am. St. Rep. 636.

If the presence of the shipper or his agents, or their acts or conduct, had the effect of preventing the defendant from in

any manner fulfilling or discharging its duties as a common carrier, the burden of proving those matters was on the defendant.

Under the facts in this case, and other instructions given, we find no error in this instruction.

7. Another instruction given is as follows: "The court further instructs you that if you find from the evidence that an obstruction of the defendant's road by a snow blockade or otherwise existed at any point at the time these sheep were loaded, which would interfere with the prompt and safe carrying and delivery of these sheep, and which was known to the defendant, and the sheep were accepted by the defendant for shipment without informing the plaintiff of the state of affairs, the defendant cannot offer the obstruction as an excuse for failure to deliver promptly, even though the obstruction was the act of God. Having undertaken to take the shipment with full knowledge of the facts, its liability as a common carrier attached. It was bound to take notice of the signs of approaching danger if any were known to it, and, if the danger was of such a character as reasonably to awaken apprehension at a time when the facilities and means of escape from danger were within their control, they were bound to use such means for the safety of the property intrusted to their care."

The appellant complains of this instruction for the reasons (1) there is no evidence to base it upon; (2) that it is an erroneous statement of the law.

The record contains evidence as to the prevalence of a storm at the time this shipment was made; that the probability of obstruction was discussed, defendant's witnesses testifying that they informed plaintiff at the time of shipment that the worst blizzard ever known was prevailing in North Dakota along the line of defendant's road. The receipt of this information was denied by plaintiff, and the question as to the existence and severity of the storm and the dangers attendant upon the shipment became and was one of the issues in the case.

As to the second objection made by defendant to this instruction, we can only say that we find no error, but believe the same to state correctly the law as applicable to this case. The general rule governing this matter is expressed in *Lamont* v. *Nashville R. R. Co.,* 9 Heisk. (Tenn.), 58, in which the court says: "The company were bound to take notice of the signs of approaching danger, and, if of such a character as reasonably to awaken apprehension at a time when the facilities and means of escape from the danger were within their control, they were bound to use such means for the safety of the property intrusted to their care." Further sustaining this general proposition of law, we cite the following authorities: *Fox* v. *Boston & M. R. R. Co.,* 148 Mass. 220, 19 N. E. 222, 1 L. R. A. 702; *Corbett* v. *Chicago, St. Paul, M. & O. R. R. Co.,* 86 Wis. 82, 56 N. W. 327; *Hewett* v. *Chicago Ry. Co.,* 63 Iowa, 611, 19 N. W. 790; 5 Am. & Eng. Ency. Law (2d Ed.), 255; *Express Co.* v. *Jackson,* 92 Tenn. 326, 21 S. W. 666.

8. We have examined the other instructions given as well as refused, and find no error in the action of the court with respect thereto, excepting the last part of instruction No. 15, found on page 134 of the record, which will be further considered.

The objection made as to the conversation of plaintiff with Superintendent Hale is not well taken, as this evidence had a direct bearing upon the question of negligence. Nor can the objection be sustained that defendant had not received the notice specified in paragraph 6 of the special contract. The record, however, shows that such information was given to the defendant by letter, and that the railroad department called for information regarding it shortly after the shipment was made. This was a sufficient notice, unless objection was made thereto by defendant; and it does not appear from the record in the case that any such objection was made. A general discussion of this subject is found in the authorities cited. (*Central R. R. Co.* v. *Pickett,* 87 Ga. 734, 13 S. E. 750; *Wabash Ry. Co.* v. *Brown,* 152 Ill. 484, 39 N. E. 273; *Hess* v. *M. Pac. Ry.,*

40 Mo. App. 202; *B. & O. Express Co.* v. *Cooper,* 66 Miss. 558, 6 South. 327, 14 Am. St. Rep. 586; *Kansas & Ark. V. R. R. Co.* v. *Ayers,* 63 Ark. 331, 38 S. W. 515; *Owen* v. *Louisville & N. R. R. Co.,* 87 Ky. 626, 9 S. W. 698.)

The counterclaim of defendant was submitted to the jury, and they were told by the court in its instruction No. 17: "If your verdict upon the plaintiff's case is in favor of the plaintiff, you should deduct this amount, if plaintiff's established claim is large enough; otherwise you should find a verdict for the defendant for the balance or for its whole counterclaim." No special finding was asked or made with respect to the counterclaim of defendant, and it is impossible to ascertain from an examination of the record whether the jury wholly disregarded defendant's claim, or whether it allowed it in full, and deducted it from the amount of the verdict returned for the plaintiff.

The further contention made by the defendant that the evidence is insufficient to sustain the verdict cannot be sustained, for the reason that the testimony is conflicting on all points at issue, and this court has repeatedly held that in such a case it will not disturb the verdict or findings. The credibility and weight to be given to the testimony of witnesses is a question exclusively within the province of the jury, and the appellate court, in case of substantial conflict, has no power to disturb the findings thereon. This court cannot try the case *de novo,* and thus invade the province of the trial court by passing upon disputed questions of fact and the credibility of witnesses. (*Baxter* v. *Hamilton,* 20 Mont. 334, 51 Pac. 265; *Barnett* v. *Brown,* 18 Mont. 369, 45 Pac. 554; *Merchants' Nat'l Bank* v. *Greenhood,* 16 Mont. 431, 41 Pac. 250, 851; *Chicago Title & Trust Co.* v. *O'Marr,* 25 Mont. 242, 64 Pac. 506; *Wastl* v. *Mont. Union Ry. Co.,* 24 Mont. 159, 61 Pac. 9; *State* v. *Howell,* 26 Mont. 4, 66 Pac. 291; *State* v. *Ford,* 26 Mont. 2, 66 Pac. 293; *State* v. *Hurst,* 23 Mont. 484, 59 Pac. 911; *State* v. *Allen,* 23 Mont. 118, 57 Pac. 725.)

9. Plaintiff, in his testimony, stated that after leaving Culbertson the shrinkage of the sheep was 33 pounds per head, or

25 pounds in excess of reasonable shrinkage, causing a damage
of three cents a pound through the loss of weight; and that, if
the sheep had arrived at South St. Paul in good condition, it
might have been necessary to feed them once before selling,
but in the condition in which they were it was necessary to feed
them four days before selling.  The witness was then asked
what the cost was of so feeding the sheep.  This was objected
to by the defendant as immaterial, and as not suggesing the
proper measure of damages.  This objection was overruled, and
defendant excepted.  The plaintiff, in answer to the question,
stated that he expended for feeding the sheep in South St. Paul
$240; that the cost of one feeding of the sheep would have been
$40.  The court, in instruction No. 15, found on page 134 of
the record, used this language: "Plaintiff is entitled to recover
such expenses in the way of feed as he was put to by reason of
the condition of the animals in question on the arrival at their
place of destination."  Plaintiff further testified that "the sheep
were weighed before and after they were fed this $200 worth
of hay," but nowhere in the record does it appear which of
these weights was taken as the basis of calculation in ascertain-
ing the shrinkage.  The burden of proving damage in this re-
gard was on the plaintiff.  From his testimony the inference
may be drawn that the sheep were weighed after they had been
fed once, and that the cost of the first feeding, which he deemed
to be necessary, was $40, and that he was damaged in the sum
of $200 by reason of the extra feeding.  This evidence on the
part of plaintiff was uncontradicted, and the court in that part
of the instruction given practically told the jury to allow this
item of damages.  If the weight of the sheep taken before the
feeding of this $200 worth of hay was used as the basis of com-
parison in calculating the shrinkage, it is easy to see that allow-
ing the $200 damage would be a double assessment of damages
against the defendant; and as the burden of proving this dam-
age, if any, was on the plaintiff, and his evidence failing to
establish it, it was error in the court to so instruct the jury.
It must be presumed that the jury allowed this damage, and
that it is a part of the verdict rendered.  The excess of damages

allowed, however, is capable of definite ascertainment, and the judgment rendered may, therefore, be corrected without another trial.

Upon a thorough examination of the entire case and the law bearing thereon, we are unable to find any material error other than that just mentioned. We therefore recommend that the case be remanded to the district court, with directions to grant a new trial, unless within thirty days after the filing of the *remittitur* from this court the plaintiff file with the clerk his consent in writing that the judgment be modified by deducting from the amount thereof the sum of $200, in accordance with the views herein expressed, in which event, and upon the entry of the judgment as modified, the judgment and order appealed from be affirmed. We further recommend that, if such consent in writing be filed, and the judgment be modified, then appellant shall recover one-third of the costs of this appeal; otherwise, the appellant shall recover all the costs of the appeal.

PER CURIAM.—For the reasons given in the foregoing opinion it is ordered that this cause be remanded to the district court, with directions to grant a new trial, unless within thirty days after the filing of the *remittitur* from this court the plaintiff file with the clerk his consent in writing that the judgment be modified by deducting from the amount thereof the sum of $200, and upon the entry of the judgment as modified the judgment and order appealed from be affirmed; that, if such consent in writing be filed, and the judgment be modified, then appellant shall recover one-third of the costs of this appeal, otherwise the appellant shall recover all the costs of the appeal.