WAHLE ET AL., RESPONDENTS, v. GREAT NORTHERN RAIL-
WAY CO., APPELLANT.

(No. 2,828.)

(Submitted May 18, 1910.   Decided May 28, 1910.)

[109 Pac. 713.]

*Carriers—Railroads—Carriage of Livestock—Wrongful Accept-
ance for Transportation—Liability of Carrier—Damages—
Evidence—Sufficiency.*

Complaint—Ambiguity—Special Demurrer.
  1.  Ambiguity in a complaint can be reached by special demurrer only.
Same—Sufficiency.
  2.  Under the rule that if a complaint states facts sufficient to war-
rant a recovery upon any theory, it must be sustained, a complaint
against a railway company to recover damages for injury to livestock
wrongfully accepted by the carrier for transportation when it knew,
or should have known, that delivery at the place of destination was
impossible under the then existing conditions of its road, though ren-
dered ambiguous by unnecessary allegations specifying the elements of
damage, *held* sufficient in the absence of a special demurrer.
Railroads—Carriage of Livestock—Wrongful Acceptance for Transport-
ation—Evidence—Immateriality.
  3.  In an action against a common carrier for wrongfully accepting
livestock for transportation when it had not the facilities to make de-
livery, a contract offered in evidence, modifying and limiting defend-
ant's ordinary obligations, was properly excluded, since, being unable
to perform its contract of carriage and delivery, it was immaterial
whether defendant had been relieved by the stipulations of the special
agreement from any of the obligations ordinarily incident to a contract
of carriage.
Same—Evidence—Proper Exclusion.
  4.  The special contract referred to in paragraph 3 above was further
properly excluded because made between plaintiffs and a carrier other
than the one sued, even though such other road was only a division of
the defendant named and plaintiffs understood that such was the case.
Same—Carriage of Livestock—Liability of Carrier.
  5.  If a common carrier accepts property for transportation when he
knows, or by the exercise of ordinary care should know, that it is likely
to be exposed to injury because he has not suitable facilities for its
transportation, he is liable for the resultant loss.
Same—Acceptance for Transportation—Care Required.
  6.  Plaintiffs, in order to make out a *prima facie* case against defend-
ant carrier, were required only to show that they delivered the live-
stock to defendant, that it failed to carry the animals to their destin-
ation and deliver them, and that loss resulted; the burden was then
upon defendant company to prove that at the time of its acceptance
of the property for carriage it could not by the exercise of ordinary
care have known or anticipated that it could not discharge the obli-
gation thus assumed; and the fact that after acceptance of the animals
its road was disabled by unprecedented floods was no defense, if from
information at hand it should have foreseen that event.

Same—Damages—Evidence—Sufficiency.
   7.   Evidence relative to plaintiffs' damages *held* to furnish some tangible basis for an estimate by the jury, and that while the verdict was for an amount much less than that fixed by the only witness who testified in relation thereto, it should not be set aside on the ground that there was no evidence to support it.

*Appeal from District Court, Jefferson County; J. B. Poindexter, Judge.*

ACTION by Benj. Wahle and another against the Great Northern Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

*Messrs. Veazey & Veazey,* and *Mr. E. L. Bishop,* submitted a brief in behalf of Appellant. *Mr. I. P. Veazey, Jr.,* argued the cause orally.

In behalf of Respondents, there was a brief by *Messrs. Kelly & Kelly,* and *Mr. M. H. Parker,* and oral argument by *Mr. D. M. Kelly.*

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought by plaintiffs to recover damages alleged to have been suffered through the negligence of the defendant railway company in accepting for transportation for them from Boulder, Montana, to Benson, Minnesota, two carloads of horses, the defendant at that time not having the proper means and facilities to transport and deliver them. Omitting the allegations touching the capacity of the defendant and the ownership and condition of the horses, the complaint states:

"(4) That on the third day of June, 1908, the plaintiffs delivered to the defendant corporation as a railway company engaged in the business of common carrier for hire, at the said town of Boulder, county of Jefferson, state of Montana, the said 67 head of horses in good order and condition for transportation by said defendant to the town of Benson, in the state of Minnesota.

"(5) That at the time of the delivery of said horses by the plaintiffs to the defendant for shipment to Benson, Minnesota, the said defendant corporation did not have the proper means and facilities to transport said horses to, and deliver them in, the town of Benson, Minnesota, within a reasonable time and in good condition, all of which said corporation well knew.

"(6) That, by use of reasonable care and diligence by said corporation, its employees, and agents, said company would not have accepted said horses for shipment on the third day of June, 1908, when said defendant corporation, its employees and agents, well knew that it did not have the proper means and facilities to ship said horses to Benson, Minnesota, in a reasonable time and in good condition, or at all.

"(7) That on the third day of June, 1908, with full knowledge of the facts and premises, said defendant corporation, its employees and agents, so negligently and carelessly conducted and so misbehaved in the premises, in its calling as a common carrier, accepted said horses from plaintiffs for shipment, and undertook to transport said horses upon its line of railroad from Boulder, Montana, to Benson, Minnesota, and caused them to be loaded in cars at its station at Boulder, Montana, and taken as far as Clancy, Montana, and on the fifth day of June, 1908, said horses were returned by the defendant corporation to Boulder, Montana, and turned back to these plaintiffs.

"(8) That, after accepting said horses for shipment as aforesaid, the defendant, by reason of its negligence, in not furnishing good and sufficient motive power and cars, and in not properly managing and running its trains, and in not furnishing proper and adequate stockyard facilities for unloading, feeding, and watering said stock, caused the said train carrying said horses to be constantly delayed, suddenly jerked and jolted, whereby one horse was killed, and several badly cut and lacerated, and that said horses were kept on said train and in said yards without a suitable place to feed or water for a period of 47 hours, whereby they were all greatly weakened and emaciated.

"(9) That on account of the said defendant negligently accepting said horses for shipment, as aforesaid, when they did not have the proper means and facilities for shipping, by reason of which they could not transport them to their destination, as agreed upon, and on account of the negligent manner in which said horses were handled and abused while in its possession, and on account of its failure to provide proper cars, yards and feed stations to properly feed and water said horses, while in its possession, said horses greatly depreciated in value, and plaintiffs were compelled to provide feed, pasturage and care for said horses for several weeks, and to expend large sums of money for labor and expenses in loading and unloading and in caring for and finding a sale for same, to the plaintiffs' damage in the sum of $500.

"Wherefore, plaintiffs pray judgment," etc.

The defendant's general demurrer having been overruled, it answered, admitting its acceptance of the horses, its agreement to transport them as alleged, and that certain of them were injured, but denying all other averments. It pleaded affirmatively that its ordinary duties and obligations as a common carrier had at the time of the delivery of the horses to it, been modified by the terms of a special contract (set out *in haec verba*), executed at the time by it and the plaintiffs. Among the stipulations therein was one to the effect that $75 should be taken as the value of each of the horses and as fixing the basis of the rate charged for transportation. It was also stipulated that as a condition precedent to the right to recover any damages for loss or injury to the horses, or any of them, plaintiffs should give defendant notice in writing within fifteen days after such loss or injury occurred, or after the arrival of the horses at their place of destination. It is alleged that there was a failure by plaintiffs to comply with this stipulation. It is further alleged that the defendant accepted and endeavored to carry the horses to the agreed destination, but that, after the transportation had commenced, an unusual, extraordinary, and unprecedented flood washed away its roadbed,

;so that further transportation was impossible, and that the horses were on June 5 returned to plaintiffs at Boulder, the point of shipment. Upon these affirmative matters there was issue by reply. The plaintiffs had verdict and judgment. The ·defendant has appealed from the judgment and an order denying its motion for a new trial.

1. The first contention is that the court erred in overruling ·the demurrer. The argument is that, if we consider paragraphs 1 to 7, and part of paragraph 9, of the complaint, we find stated a cause of action for negligence by defendant for receiving and subjecting the horses to useless transportation,. when it knew it had not facilities to enable it to make delivery ·of them at their destination; but that, if we consider paragraphs 1, 2, 3, 7 and 8 and other portions of paragraph 9, we find stated a cause of action for breach of duty by defendant as a common carrier to transport the horses with reasonable ,speed and due care. Hence, it is said that, since these allegations are contradictory and inconsistent, they mutually destroy ·each other, with the result that the complaint does not state a ·cause of action within the rule prescribed by the statute, to-wit, ·that it shall contain a statement of the facts constituting the ·cause of action, in ordinary and concise language. (Revised Codes, sec. 6532.)

It is reasonably clear from an inspection of the complaint that the purpose of the pleader was to state a cause of action ·for a breach of duty by the defendant in accepting the horses for transportation and subjecting them to the damage necessarily incident to having them loaded on its cars and carrying them the distance it did, when it knew, or should have known, that it could not deliver them at their destination. It is conceded by counsel for defendant that it states facts sufficient to warrant a recovery on this theory for all damage which the horses suffered, whether it was aggravated by negligence on the part of the defendant in transporting them to Clancy, or by its omission to provide suitable facilities for unloading and feeding them at that place. If this is so, the defendant is in

no position to object that the complaint goes further and specifies the elements of damage when it was not necessary to do so. The pleading is not a model, but the most that can be said of it is that it is ambiguous. This is a defect which can be reached only by special demurrer. (Revised Codes, sec. 6535.) From this point of view, the allegations are neither contradictory nor inconsistent and the rule, often announced by this court, that if a complaint states facts sufficient to warrant a recovery upon any theory, it will be sustained, applies. (*Donovan* v. *McDevitt,* 36 Mont. 61, 92 Pac. 49; *Raymond* v. *Blancgrass,* 36 Mont. 449, 93 Pac. 648, 15 L. R. A., n. s., 976; *Hoskins* v. *Northern Pacific Ry. Co.,* 39 Mont. 394, 102 Pac. 988.)

2. Error is alleged upon the action of the court in excluding evidence of the contract pleaded in the answer, modifying and limiting the ordinary obligations of the defendant as a common carrier. The copy offered in evidence, though substantially the same in other particulars, differed from the contract pleaded in two important particulars. The contract pleaded purports to be between the plaintiffs and defendant. The copy offered purports to be between the plaintiffs and the Montana Central Railway Company. The contract pleaded also contains a stipulation to the effect that any action brought for damages for delay in transportation, or for loss or injury to any of the horses, must be brought, if at all, within three months after such loss or injury occurred, whereas the copy offered contains no such stipulation. Upon the theory that the action was brought for the wrongful acceptance by defendant of the horses for transportation, evidence of the contract was wholly immaterial; for, since it could not carry and deliver them as it undertook to do, it was wholly immaterial whether the defendant was guilty of unnecessary delay in delivering them, or caused loss of or injury to any of them by improper handling during the course of transportation from Boulder to Clancy, or by failing to provide proper facilities for caring for them at the latter place. The contract of carriage contemplated transportation and

delivery. It being impossible for the defendant to perform this contract, it was immaterial whether it had been relieved by the stipulations of the special contract from any of the obligations ordinarily incident to a contract of carriage. But, adopting the theory that the defendant was able at the time it accepted the horses to carry them to their destination and would have done so but for the unprecedented flood, the contract offered was not the one pleaded, and could not be any defense against a recovery for loss caused by delay in the performance of its contract, or for the injury resulting from the negligent handling of the horses or providing for care of them while on the way. The averment of such a contract between plaintiffs and defendant could not be supported by proof of a contract between the plaintiffs and a third party. If, as defendant contends, the Montana Central Railway was only a division of its own railway, and the parties understood when the contract was signed that such was the case, and that plaintiffs understood that they were in fact contracting with the defendant, the designation of it as Montana Central Railway being used merely as a convenient designation of that division, the case is in no wise aided. Under the allegations in the answer, the plaintiffs were required to respond to a contract containing specific stipulations entered into with the defendant, and could not at the trial be held to respond to a contract with any other person, not a party to the action, containing other and different stipulations.

3. Way, one of plaintiffs, testified that the horses had been loaded at Boulder at about 8 o'clock in the evening of June 3; that the train reached Clancy, a distance of twenty-two miles away, about 3 o'clock next morning; that he then ascertained that a horse in one of the cars was down and at once requested the agent to unload the car containing it, so that he could find out what the trouble was; that the agent then informed him that all would have to be unloaded, which, owing to delay on the part of the agent, was not accomplished until about 6 o'clock, or three hours later. The injured horse was afterward killed. The de-

fendant examined the witness Murphy, its assistant superintendent, as to the conditions existing along the line of defendant's railway at the time the horses were accepted for shipment at Boulder.   He testified, among other things, that under the conditions as to high water and probable floods as he saw them he was of the opinion that it was consistent with careful and prudent railroading to send trains beyond Clancy on June 3 and during a part of the following day.   On cross-examination he was asked and required to answer the following question: "Assuming that this carload of horses got into Clancy on the morning of June 4 some time about 2 or 3 o'clock, and that immediately thereafter the owner of the horses went to the agent of the company at the depot at Clancy and asked him when they were going to get out there, and he told him that he did not know, and that thereafter immediately he told him that one of those cars of horses would have to be unloaded because one of them was down in the car being trampled upon by the others, do you consider it careful and prudent railroading if this horse were left in that car until 6 o'clock that morning?"   Answering, he said he did not.   Objection was made that the question was improper, in that, being hypothetical, it recited a fact which did not appear from the evidence, *viz.*, that the agent at Clancy knew the condition of the horse.   It appears from the testimony of Way that the agent knew of the condition of the horse, and hence the question recited no fact which did not appear from the evidence. Assuming, therefore, that the question was otherwise pertinent and proper, the ruling was correct, because the question was not open to the objection made to it.

4. It is argued that the evidence is insufficient to sustain the verdict in that it appears that if there was any damage to the horses it was only such as is ordinarily incident to the transportation of such animals resulting from being confined in the cars and carried contrary to their natural habits and from unavoidable delay, etc., and in that the statements of the witnesses as to the extent of the damage are not sufficiently definite to justify a finding in any amount.   It is also said that there is no evi-

dence that at the time the defendant accepted the horses for transportation it knew that it did not possess ample facilities for carrying them to their destination. It may be conceded that the loss of the horse that was killed and the depreciation in value of the others should be attributed to the cause assigned by the defendant. In that case no recovery could be had if it appeared from the evidence that at the time it accepted them the defendant was in a position to carry them to their destination and used reasonable diligence in that behalf. To avoid delay in delivery, the carrier is held to the exercise of reasonable care only. (Revised Codes, sec. 5355.) A different rule of liability is imposed for loss or injury to the property while it is in his possession. He is liable in that case for loss or injury accruing from any cause whatever, except from some inherent defect, vice, weakness, or spontaneous action of the property itself, or the act of a public enemy, or any "irresistible superhuman cause." (Revised Codes, sec. 5353.) But even these exemptions do not apply if the carrier negligently exposes the property to the cause of the loss. (Revised Codes, sec. 5354.) The result of this latter provision is that acceptance of property by the carrier when he has not suitable facilities for its transportation, or when he knows, or by the exercise of ordinary care should know, that it will be exposed to injury or loss from any of the causes mentioned in the exemptions, he is liable; for, under such circumstances, the loss or injury is to be attributed to his own wrong, just as if he had wrongfully taken the property and converted it in the first place, and the measure of damages is the same. Hence under the application of this rule, which is assumed by the defendant to be correct, it does not matter that the injury complained of was due to the causes assigned by defendant, if it violated its duty in undertaking to carry the horses when it should not have done so. Under the rule recognized generally and followed by this court, in *Nelson* v. *Great Northern Ry. Co.*, 28 Mont. 297, 72 Pac. 642, the defendant was bound to take notice of the signs of approaching danger, and, if they were of such a character as to awaken reasonable apprehension at the

time when the means of avoiding the danger could be availed of—that is, at the time the contract was made and the property accepted—the defendant assumed the risk, if it neglected to avail itself of the information which it had or might have had by the exercise of reasonable diligence. Its only alternative was to refuse to accept, or to accept with the consent of the plaintiffs, after giving them full information as to the conditions. And this brings us to the point when we must inquire what the evidence shows these conditions to have been on June 3, and what knowledge the defendant had of them.

During the month of April a flood caused by the breaking of a dam in the Missouri river had washed away a considerable portion of defendant's track and roadbed between Clancy and Great Falls, over which it must convey all freight shipped to eastern points. This had been restored, but the roadbed was still unsettled and soft and in places unballasted. On June 3, owing to heavy rains then and theretofore prevailing along the line of defendant's road, conditions in many places between Boulder and Great Falls were threatening. The water in the streams was continually rising. During the afternoon of the 3d a small portion of track had been washed out and restored. During the day application had been made to the defendant by the Northern Pacific Railway Company to have the passenger trains of the latter, carrying mail, nine in all, detoured from its main line, which had been washed out in places by high water in other parts of the state, to the main line of the defendant over the line extending from Boulder and Clancy to Helena and Great Falls. During the afternoon of the day, all available locomotives belonging to the defendant had been gathered at Helena, to be used in detouring these trains, and freight trains due to leave Clancy and other places to the south for Great Falls on that evening were all annulled. The transfer of the trains of the Northern Pacific Railway Company began with the early morning of the 4th. There had also been trouble with the telegraph line. At 3 o'clock P. M. a freight train left Great Falls for Helena. This arrived at the latter place on the morning

of the 4th. The train having on board the plaintiffs' horses was the last freight train started in the direction of Great Falls from any point south of Clancy on the day of the 3d. One passenger train left Clancy late in the evening, and reached Great Falls on the morning of the 4th. Early in the morning of that day, the telegraph line became entirely disabled, and thereafter all passenger trains (the only ones moved) were handled by means of the long-distance telephone. At some time during the day, all trains were annulled and none were moved for some time thereafter, because of the flood which destroyed portions of the roadbed. The chief train-dispatcher of the defendant testified that the agents of the defendant did not usually anticipate trouble in forwarding perishable property, such as horses, until conditions became serious, and that they were not regarded as serious until they were such as to tie up the business of the road entirely.

Under the issues presented by the pleadings, the plaintiffs were required to go no further than to prove that they delivered the horses to defendant; that it failed to carry them to their destination and deliver them; and that there was loss of or injury to some of them. To acquit itself of responsibility, the defendant was required to show that at the time of its acceptance it could not by the exercise of ordinary care have known or anticipated that it could not discharge the obligation thus assumed (*Jones* v. *Minneapolis & St. Louis R. Co.*, 91 Minn. 229, 103 Am. St. Rep. 507, 97 N. W. 893; *Grier* v. *St. Louis M. B. T. Co.*, 108 Mo. App. 565, 84 S. W. 158), and it does not avail it that, after acceptance, its road was disabled by the intervention of the flood, however unprecedented it may have been, if by the exercise of reasonable diligence it could have anticipated that such would be the case (*Nelson* v. *Great Northern Ry. Co.*, *supra*).

Under the facts stated, we do not think that we should conclude as a matter of law that the defendant has acquitted itself of responsibility. Of course, if the testimony of the train-dis-

patcher is to be taken as conclusive of the question when a common carrier may or may not accept property for transportation, he would always, without reference to the character of the property, be justified in accepting it until it became impossible to carry it.    The adoption of this rule would excuse the carrier entirely from the obligation to take note of facts which would lead a reasonable person to the conclusion that he could not discharge the attendant obligations.    Taking into consideration the general condition of the line of defendant's road from the point of shipment to Great Falls, the prevalence of heavy rains along the line by which the streams were much swollen, that the water was constantly rising, that the conditions were threatening, that there had been trouble with the telegraph lines, that the roadbed was in places new and soft because of the rains, that a portion of it had been washed out within a few hours of the time of shipment, that all the available locomotives of the defendant were already held for the detouring of the trains of the Northern Pacific Railway over the portion of the line by which the horses must be carried, if at all, and that this would in any event cause some delay—we are of the opinion that the evidence presented a case for the jury, and that its finding thereon should not be disturbed.

The evidence submitted as to the amount of damage sustained by plaintiffs, apart from the value of the horse which was killed, is not as satisfactory as it might have been.    It consists entirely of a statement by one of the plaintiffs, to the effect that two of those returned to him were cut, that they were all bruised and "skinned up" and had lost flesh, so that they were not fit for sale, and that he estimated their depreciation in value at $10 a head.    Nevertheless it furnished some tangible basis for an estimate by the jury; and, while their finding was for an amount much less than that at which the witness fixed it, we do not think the verdict should be set aside on the ground that there is no evidence to support it.

41 Mont.—22

Incidentally the foregoing discussion disposes of all the other material contentions made by counsel. We shall, therefore, not give them special notice.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.