HEITMAN, RESPONDENT, v. CHICAGO, MILWAUKEE & ST. PAUL RY. CO., APPELLANT.

(No. 3,123.)

(Submitted April 12, 1912.    Decided April 17, 1912.)

[123 Pac. 401.]

*Carriers—Livestock—Action for Damages — Statute of Limitations—Evidence — Admissions — Instructions — Pleading and Proof—Harmless Error.*

Carriers—Livestock—Action for Damages—Statute of Limitations.
  1. *Held,* that subdivision 4 of section 6450, Revised Codes, declaring that an action for killing or injuring stock by a railroad company must be commenced within one year, has no reference to a cause of action arising out of a carrier's negligence in the transportation of livestock.
Same—Pleading and Proof—Variance.
  2. Under the complaint in a shipper's action for damages for negligent carriage of livestock, which alleged that the cattle were not "safely" carried, and that they were damaged and injured by the negligence of the defendant, evidence as to the quality of the hay and water furnished by defendant was within the issues.

Appeal and Error—Harmless Error.
    3.  A judgment should not be reversed for error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties.

Trial—Request for More Specific Instruction.
    4.  Where a party desires a more specific instruction than one given, he must offer one in conformity with his view of the law.

Evidence—Admissions—Conclusiveness and Effect.
    5.  Claims for damages from negligent carriage of livestock, presented to defendant upon arrival at destination, if viewed as admissions as to the amount of damages sustained, are not conclusive in the shipper's action for damages, but may be explained and contradicted, leaving the jury to give them such weight as they see fit.

Trial—Instructions—Refusal—When not Error.
    6.  Requested instructions covered by other instructions given are properly refused.

Same.
    7.  In the absence of evidence that injury to livestock while being transported on a railway was caused by the bad temper, restiveness, viciousness, *etc.*, an instruction to that effect was properly refused.

Same.
    8.  Where the evidence, in a shipper's action for negligent carriage of livestock, showed that the injuries complained of were occasioned by the negligent manner in which the carrier set the cars preparatory to reloading the stock, an instruction that the carrier was not liable, if the damages resulted from negligent handling by the employees of a private concern, was properly refused.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

ACTION by Louis Heitman against the Chicago, Milwaukee and St. Paul Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*Messrs. Gunn, Rasch & Hall,* and *Mr. W. W. Patterson,* for Appellant, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

In an action for damages for stock shipments, the pleader should be more certain and definite than as required by the general rule stated above. Charging negligence in the handling of a shipment of stock traveling hundreds of miles and passing through the hands of scores of servants and employees, and subjected to innumerable conditions from which damages may arise, is far different from charging negligence in the operation of a machine, a mine, a mill, *etc.* In the latter class of cases a general charge of negligence should be sufficient, as the acts on which

negligence is based should be sufficiently within the knowledge of the managers or persons in charge of the work, that they would have no difficulty in ascertaining the facts and circumstances connected with the alleged acts of negligence. The authorities show that the practice is to, at least, particularize in the pleading to the extent of charging negligence by reason of "delay," "defective cars," "lack of water and feed," "rough handling of trains," or some similar term, to show in which of defendant's departments, connected with the handling of such shipment, the acts of alleged negligence occurred. (See *Nelson* v. *Great Northern Ry. Co.*, 28 Mont. 297, 72 Pac. 642; *Wahle* v. *Great Northern Ry. Co.*, 41 Mont. 326, 109 Pac. 713; *Willison* v. *Northern Pac. Ry. Co.*, 111 Minn. 370, 127 N. W. 4; *Gulf etc. Co.* v. *Wilhelm* (Tex. App.), 16 S. W. 109; *Texas & P. Ry. Co.* v. *Stephens* (Tex. Civ. App.), 86 S. W. 933; *Moore* v. *Baltimore & O. R. Co.*, 103 Va. 189, 48 S. E. 887; *Central of Georgia Ry. Co.* v. *James*, 117 Ga. 832, 45 S. E. 223; *Southern Express Co.* v. *Ashford*, 162 Ala. 591, 28 South. 732; *Smith* v. *Michigan C. R. R. Co.*, 100 Mich. 148, 43 Am. St. Rep. 440, 58 N. W. 651.)

That the correct measure of damages was "the difference between the market price in Chicago on that day and what the said cattle actually brought," as pointed out in the objections to instruction No. 9, instead of "such an amount as will compensate them for the detriment proximately caused by the wrongs, if any, to the cattle," as given in said instruction, see *Cleveland C. C. Ry. Co.* v. *Patton*, 203 Ill. 376, 67 N. E. 804; *New York Ry. Co. etc.* v. *Estill*, 147 U. S. 591, 37 L. Ed. 292, 13 Sup. Ct. Rep. 444; *Illinois Central Ry. Co.* v. *Holt* (Ky.), 92 S. W. 540; *Sloop* v. *Wabash Ry. Co.*, 93 Mo. App. 605, 67 S. W. 956; *Texas & P. Ry. Co.* v. *Sherrod* (Tex. Civ. App.), 87 S. W. 363; *C. B. & Q. Ry. Co.* v. *Todd*, 74 Neb. 712, 105 N. W. 83. As to proper instruction on the measure of damages for injury to livestock shipped to market, see Brickwood-Sackett on Instructions, secs. 782, 783; *Illinois Central Ry. Co.* v. *Holt* (Ky.), 92 S. W. 540.

Instruction No. 5, refused, correctly states the law relating to the transportation of live animals. (6 Cyc. 381; Hutchinson on Carriers, 3d ed., sec. 336.) That western beef cattle riding in moving cars for long periods of time will display restiveness and viciousness is a matter of common knowledge, upon which jurors may act without any direct testimony thereon. (16 Cyc. 852, 874, note, 66; *Tolin* v. *Terrill,* 133 Ky. 210, 117 S. W. 290.)

*Messrs. H. G. & S. H. McIntire,* for Respondent, submitted a brief; *Mr. H. G. McIntire* argued the cause orally.

Section 4386, United States Revised Statutes, as amended, requires in interstate shipments of cattle that they shall be unloaded for food, water, and rest every twenty-eight hours, and makes a violation of the law negligence *per se,* and the carrier liable for all damages sustained by the stock, as well as for the penalty. (*Reynolds* v. *G. N. R. Co.,* 40 Wash. 163, 111 Am. St. Rep. 883, 82 Pac. 164, 165; *Nashville etc. R. Co.* v. *Heggie,* 86 Ga. 210, 22 Am. St. Rep. 453, 12 S. E. 363; 5 Thompson on Negligence, sec. 6583; 6 Cyc. 439.) This statute may be availed of in the state courts. (*Chesapeake & O. R. Co.* v. *American Ex. Bank,* 92 Va. 495, 44 L. R. A. 449, 23 S. E. 935; *St. Louis etc. Co.* v. *Piburn* (Okl.), 120 Pac. 923.) The statute was passed to minimize the suffering of livestock in transit; and it does not lie in the mouth of defendant to say its violation would have inured to its benefit. (*St. Louis etc. Co.* v. *Piburn, supra.*)

Evidence of the failure of the defendant to furnish the cattle with feed and water was admissible under the pleadings. It is the universal rule that under a general allegation of negligence any evidence tending to show that the act was negligently done may be admitted. (29 Cyc. 571.) In the absence of a motion to make more definite and certain, or of a special demurrer, a general allegation of negligence is sufficient to admit proof of the circumstances constituting it. (*Adams Express Co.* v. *Aldridge,* 20 Colo. App. 74, 77 Pac. 6; 1 Boone on Code Pleading; sec. 174; 4 Current Law, 780; 6 Current Law, 767;

29 Cyc. 570, and cases cited.) There was no such motion or demurrer interposed to the complaint in this case. But both at common law and by Revised Codes, section 5353, which makes a common carrier liable for loss or injury from any cause whatever, with certain exceptions not material here, the plaintiff is required to go no further than to prove delivery to defendant, and that there was loss or injury to the property delivered. If the carrier, for any reason, is not liable for the loss, it is incumbent upon him to show it. (*Wahle* v. *Great Northern Ry. Co.*, 41 Mont. 336, 109 Pac. 713; *Merritt Cream Co.* v. *Atchison etc. Ry. Co.*, 128 Mo. App. 420, 107 S. W. 464.) It is admitted that defendant was a common carrier, and as such received the shipment in question. There was no allegation of any special contract limiting the defendant's liability, nor is there any proof thereof. Appellant attempts to confine the phrase "safely carry" to injuries received solely while the animals were in its cars, but just as well may the phrase "negligently conducted and misbehaved in regard to the same" be applied to the last preceding antecedent of the relative pronoun "same," which in the sentence is cattle, as to the act of carrying. When a common carrier accepts a shipment of livestock for carriage to a distant point which will take several days to reach, its duties are more than merely to furnish proper and sufficient cars, as in a shipment of dead freight. It must care for the animals; give them food and water; not suffer them to die of hunger or thirst; or depreciate in value through its neglect. (*Nelson* v. *Great Northern Ry. Co.*, 28 Mont. 325, 72 Pac. 642; *Wahle* v. *Great Northern Ry. Co., supra; St. Louis etc. Co.* v. *Piburn, supra.*)

MR. JUSTICE SMITH delivered the opinion of the court.

Plaintiff seeks to recover damages for loss, alleged to have been sustained by himself and four other persons, his assignors, on account of the negligence of the defendant in transporting a train-load of cattle for them from Dorsey, Montana, to Chicago, Illinois. As to each consignment of cattle, the complaint alleges,

*inter alia:* "That the defendant did not safely carry the said
cattle as it undertook and agreed to do, but, on the contrary, by
its servants and agents, so negligently conducted and misbehaved
in regard to the same   *   *   *   that the said cattle were dam-
aged and injured   *   *   *   by reason of the negligence of the
defendant." The defendant answered affirmatively "that it
safely carried said cattle with reasonable care and speed, and
in accordance with the usual and regular schedule of time for
the running of stock trains over its road; that said cattle were
unloaded at Montevideo, Minnesota,   *   *   *   for the purpose
of feeding and watering the same;   *   *   *   that the said cattle
had received the necessary feed and water;   *   *   *   that any
damage to said cattle through unusual shrinkage or otherwise was
due solely to the actions of the parties in charge thereof, by
delaying the shipping." As a further defense, it was alleged
that the cause of action is barred by the provisions of subdivi-
sion 4, section 6450, Revised Codes. This subdivision reads, in
part, as follows: "4. An action for killing or injuring stock
by a railroad corporation or company" must be commenced
within one year. Plaintiff had verdict and judgment. Defend-
ant appeals from the judgment, and from an order denying a
new trial.

1. Respondent objects to our considering the bill of exceptions
for technical reasons; but we prefer to decide the appeal on its
merits.

2. Appellant contends that the cause of action is barred. It
has never been supposed in this jurisdiction that subdivision 4
[1] of section 6450, *supra,* has reference to causes of action,
such as the one we have under consideration. While this is an
action founded in tort (*Nelson* v. *Great Northern Ry. Co.,* 28
Mont. 297, 72 Pac. 642), it is essentially an ordinary common-
law action for injury to personal property, and falls within the
provisions of the statute of limitations, relating to such actions,
rather than within subdivision 4 of section 6450, which has
special reference to stock killed or injured by railroads, other
than stock in their possession and under their control as bailees

or common carriers. The Kentucky court of appeals so held in *Illinois Central R. Co.* v. *Brown* (Ky.), 54 S. W. 169, in construing a somewhat similar statute, and again in *Burnside & C. R. Ry. Co.* v. *Tupman* (Ky.), 72 S. W. 786. We shall not undertake to point out the manner or circumstances of killing or injuring stock to which subdivision 4 of section 6450 relates, any further than to hold that it has no reference to cases like this.

3. It is argued that the allegations of the complaint are not sufficiently broad to justify evidence that the water and hay [2] furnished en route were of inferior quality. Appellant contends that the words "safely carried" limited the issue as to the manner in which the injuries to the cattle were occasioned. We cannot agree with counsel in their conclusion that the court committed prejudicial error in admitting or refusing to strike the testimony concerning the quality of the hay and water furnished by the defendant. There was no special demurrer to the complaint or motion to make more definite and certain. The witness Potter was permitted to testify fully as to these alleged grounds of negligence, without objection. The complaint charges that the defendant "so negligently conducted and misbehaved * * * that the cattle were damaged and injured * * * by reason of the negligence of the defendant." The word "safely" adds nothing to the statement of a cause of action. It has reference to the contractual relation existing between the parties, and not to the negligence feature of the charge. The defendant's answer shows that it was advised in a general way that one ground of alleged negligence was failure to furnish proper feed and water. No judgment should be reversed by [3] reason of any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties. We do not think the substantial rights of the defendant were affected by the alleged errors of which complaint is made. The cause was tried on its merits.

4. Over defendant's objection, the court gave the following instruction to the jury, *viz.:* "No. 8. You are instructed that

in the transportation of cattle from one state to another by a railway company such cattle must be unloaded, fed, and watered every twenty-eight hours; and if they are not so fed and watered the railway company is liable for such damage to said cattle as they may be proximately caused by such failure." Chapter 3594 of the Public Acts of the Fifty-ninth Congress of the United States, passed June 29, 1906 (volume 34, part 1, Public Laws, p. 607), makes it lawful for the carrier at the written request of the owner or person in custody of a shipment of live-stock, to extend the period of confinement in transit to thirty-six hours. The witness Stewart, one of the owners, testified that when the cattle were shipped he got (gave?) a permit, which entitled them to run continuously for thirty-six hours. The objection to the instruction was that it was not applicable to the facts in the case, "as the testimony shows that thirty-six hour permits were signed, in this case, by the shippers, which gave the defendant the right to run said train continuously for thirty-six hours," and also "that it recognizes the right of the plaintiff to recover for his own contributory negligence in not insisting that the cattle should have been unloaded before they had been held so long as to violate the law; it appearing that the shipper accompanied the shipment of cattle." It will be at once noted that the instruction, while evidently founded in the federal statute, is silent as to any ground of negligence predicated upon a failure to unload the cattle. It relates entirely to a failure to feed and water. There is testimony in the record to show that, while the cattle were unloaded and fed, they were without water suitable to drink, or which they would drink, for many hours in excess of thirty-six. An inspection of the charge of the court, as a whole, discloses the fact that the question of negligence on the part of the defendant for failure to unload within twenty-eight or thirty-six hours, as provided by the federal statute, was not submitted to the jury. They were told that, if they believed the defendant used reasonable care in furnishing the cattle with water that was "fit and suitable for watering cattle," it had discharged its full duty in

that regard. Also, that if the delays along the road, if any, were due to the acts or instructions of the shippers, then the defendant was not liable for any injuries to the cattle growing out of such delays. Under these circumstances, we fail to see how the defendant was prejudiced by the instruction of which complaint is made, although we are at a loss to know why it was given.

5. Instruction No. 9, given by the court, reads as follows: "If the jury should find for the plaintiff, then, in estimating the damages sustained by him, they should also allow such an amount as will compensate for all the detriment approximately caused by the wrongs, if any, to the cattle sued for herein." Defendant objected to this instruction "that it does not limit the amount of damages for which the jury can return a verdict," and "the correct measure of damages would be the difference between the market price in Chicago on that day and what the said cattle actually brought." The instruction given, although crude and peculiar in phraseology, appears to be unobjectionable in substance. An attempt was evidently made to follow the general rule laid down in the Codes. If the defendant desired a more [4] specific direction on the subject of damages, it was the duty of counsel to frame and offer one in conformity with their views of the law. (*Rand* v. *Butte Electric Ry. Co.*, 40 Mont. 398, 107 Pac. 87.) This rule has not been changed by the statute (Rev. Codes, sec. 6746) relative to procedure on settlement of instructions. It is still necessary to put the trial court in error. The instruction given, being good so far as it goes, leaves nothing for this court to consider.

6. Appellant complains of the following instruction, given by the court over its objection: "(11) The jury are instructed, [5] that parties have a right to get together and buy their peace, by making concessions to each other; and any offer or proposition of settlement, if made for that purpose merely, will not be binding upon the party as an admission of the amount due or claimed at the time." It appears from the record that upon their arrival in Chicago with the cattle the appellant and

other shippers filed claims for damages with the defendant for amounts considerably less than those which are now demanded. The defendant put these written demands in evidence at the trial. The objections to the instruction were "that there was no testimony in the case showing any offer of compromise," and "the claim filed by the plaintiff and his assigns was an unqualified demand for the full amount of damages alleged to have been sustained by them at the time of the filing of said claims." It is somewhat difficult to ascertain the meaning of the instruction and the reason for giving it. Two of the shippers had testified, in effect, that they were willing to take the amount demanded at the time, in order to get a settlement; but that the sum mentioned did not in fact represent the actual damages sustained. One testified: "We didn't want to stand a lawsuit, and put in the claim, thinking they would accept it." The claims were voluntarily presented. There was no necessity for their presentation as the basis of a lawsuit. Viewed as admissions as to the amount of the damages sustained, they were contradictory of the evidence offered at the trial, and in that regard were against the interest of the plaintiff, and might have been so considered by the jury. But they were not conclusive. They could be explained and contradicted, and the jury might attach to them such weight as they saw fit. They were in fact not binding as to the amount actually due, and so the court told the jury. We do not understand from the instruction that the court intended to advise the jury that they were not competent evidence, or that they were entitled to no weight or consideration whatsoever. The jury probably considered them for what they were worth in arriving at a verdict. At any rate, there is not anything in the instruction to preclude them from so doing.

7. The court refused to give defendant's offered instruction No. 3, which reads as follows: "If the jury find from the evidence that said cattle were damaged or injured over and above the injury or damage that would necessarily result to a shipment of the kind and character of the cattle these were, and in their condition, in making the trip by rail that these cattle made,

and you further find from a preponderance of the evidence that the acts of the shippers accompanying said cattle, or any of said acts, as set out and alleged in defendant's answer, proximately contributed to cause said damage, then your verdict should be for the defendant.'' The court did, however, give instructions Nos. 13, 14, 16, 17, and 18, which, we think, fully covered that branch of the case.

8. The court also refused to give the following instructions, tendered by the defendant: ''(9) If you find from the evidence that the defendant furnished suitable cars in which to ship said cattle, and used all reasonable care in managing and transporting the same, and that the damage and injury, if any, was caused by the peculiar character of the animals themselves, such as bad temper, unusual restiveness, or viciousness, or was such as is ordinarily incident to the transportation of such animals, resulting from being confined in the cars and carried, contrary to their usual habits, and from unavoidable delays, then the defendant is not liable in this case.'' ''(11) If the jury believe from the evidence that the defendant had no knowledge of a steer being down in the car until after it was dead, and that such steer got down as the result of the inherent nature and propensities of the animal, or of the other cattle in such car, and through no negligence of the defendant, then the defendant is not liable for damages for the loss of said steer.'' These instructions were properly refused on the authority of *Nelson* v. *Great Northern Ry. Co., supra, Wahle* v. *Great Northern Ry. Co.,* 41 Mont. 326, 109 Pac. 713, and section 5353, Revised Codes.

9. Offered instruction No. 15 was refused, and defendant excepted. It reads thus: ''You are instructed that it is undisputed that the yard where said cattle were loaded at Milwaukee was under the control of a private concern, and not under the control or management of the defendant company. You are further instructed that, although you find that a stopover at Milwaukee was necessary by reason of prior negligence on the part of the defendant, you cannot find for the plaintiff

for damages sustained, if any, by reason of the handling of said cattle in loading them into the cars by the employees of the concern that had charge of said yard, however improper said handling was.'' It is a sufficient answer to this assignment of error to say the testimony shows that the injuries complained of as having been sustained at Milwaukee were occasioned by the negligent manner in which the defendant company set the cars, preparatory to reloading the cattle.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

(Submitted April 12, 1912.  Decided April 17, 1912.)